FIDELITY & DEPOSIT CO. *v.* MERCHANTS' & MARINE BANK OF PASCAGOULA.

(Division A. Dec. 4, 1933.)

[151 So. 373. No. 30884.]

(Division A.    April 23, 1934.)

[154 So. 260.  No. 30884.]

**H. P. Heidelberg,** of Pascagoula, **P. M. Milner,** of New Orleans, Louisiana, and **Arthur G. Powell,** of Atlanta, Georgia, for appellant.

Ford, White & Morse, of Pascagoula, for appellee.

Argued orally by **Arthur G. Powell**, for appellant, and by **E. J. Ford** and **J. I. Ford**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee sued the appellant on an employees' fidelity bond and also the defaulting employees. The decree awarded judgments against the employees and also

the appellant, who executed the bond. The appeal is by the appellant, the surety, only.

The case presented by the record, in so far as is necessary for an understanding of the questions decided, is, in substance, as follows:

On the 28th day of December, 1928, the appellant executed and delivered to the Merchants' & Marine Bank of Pascagoula, Mississississippi, a schedule employees' fidelity bond insuring the fidelity of certain officers and employees of the bank, among whom were W. J. Lindinger, president, in the sum of twenty-five thousand dollars, L. A. Watts, cashier, in the sum of twenty thousand dollars, and T. W. Hudson, assistant cashier, in the sum of ten thousand dollars. On the 25th day of February, 1931, a bankers' blanket bond was executed by the appellant to the same bank by which it agreed to indemnify the bank "against the direct loss, sustained while this bond is in force and discovered as hereinafter provided, of any money or securities, or both, as defined in section 5 hereof, in which the insured has a pecuniary interest, or held by the insured as collateral, or as bailee, trustee or agent, and whether or not the insured is liable herefor (such money and securities being hereinafter called property), in an amount not exceeding fifty thousand dollars ($50,000), as follows: (A) Through any dishonest act, wherever committed, of any of the employees, as defined in section 6 hereof, whether acting alone or in collusion with others." A rider attached to this bond provided, in substance, that it should continue in force and secure the payment of any of the bank's losses under the schedule employees' liability bond that would have been recoverable by it on that bond, not to exceed the penalty of the new bond.

The Merchants' & Marine Bank of Pascagoula was liquidated by the state superintendent of banks, and all of its assets and choses in action were sold by the super-

intendent to the appellee, a new and different bank of the same name. Among the choses in action thus acquired by the appellee was the old bank's right to recover on these two bonds for any defalcation of its employees covered thereby. The defalcations, to recover for which this suit is brought by the new bank, were committed by the three officers whose names are hereinbefore set forth, and consist, as to all of them, in either lending themselves money belonging to the bank or obtaining such loans without "first having obtained the approval of a majority of the board of directors of the bank, or of an executive board or discounting committee selected by a majority of the board of directors," as required by section 56, p. 317, chapter 207, Laws 1916, now section 3812, Code 1930; and, as to Lindinger, the obtaining of loans from the bank in excess of the amount permitted by section 54, chapter 124, Laws 1914, now section 3810, Code 1930, and the statute now appearing as section 4151, Code 1930; and the withdrawal of money for his personal use from the bank's cash box, leaving therein a written memoranda of the sums withdrawn by him.

The second bond, the one here sued on, provides that: "At the earliest practicable moment, and at all events not later than ten days, after the insured shall discover any loss hereunder, the insured shall give the Underwriter notice thereof by registered letter or telegram, addressed to it at its home office, and shall also, within three months after such discovery, furnish to the Underwriter at its home office affirmative proof of loss with full particulars." No notice was given the appellant by the bank of the defalcations of its employees within ten days after the appellant claims they were discovered by the bank, and none was, in fact, given until a comparatively short time before the insitution of this suit. The bond does not provide that the failure to give the notice shall relieve the appellant from liability thereon, nor does it, by necessary implication, make the provision for notice of the essence

of the contract. Consequently, the bank's failure to give the required notice cannot be availed of by the appellant, unless it is made to appear that the failure so to do has resulted in such prejudice to its rights under the bond as would make it inequitable to permit a recovery thereon, and such is not the case here. Employers' Liability Assurance Corp. v. Jones County Lumber Co., 111 Miss. 759, 72 So. 152. This case has not been qualified by the discussion in subsequent cases as to whether the notices there given under such a contract, though not within the time stipulated, were given within a reasonable time thereafter.

Both of the bonds provide for their termination on the happening of certain events, one of which is, in the first bond, "upon discovery of loss through that employee," and under the second, "upon discovery by the insured of any default under the bond by an employee."

The first defalcation by Lindinger was on May 15, 1929. He then owed the bank eleven thousand dollars, which he increased to fourteen thousand six hundred dollars; that is, he obtained, by making to himself, a new loan of three thousand six hundred dollars. This loan was not authorized in the manner required by the statute hereinbefore cited, but was afterwards approved by the board of directors at its quarterly meeting on June 6, 1929. This, as counsel for the appellee correctly say, did not cure the illegality of the loan; indeed, it is one of the defalcations sued on. Had the board of directors the right to waive the requirement of the statute that the loan should have been previously authorized, it may be that it had the right to waive it after the loan was made, but it had no such right. German Savings Bank of Des Moines, Iowa, v. Des Moines National Bank of Des Moines, Iowa, 122 Iowa, 737, 98 N. W. 606. The statute expressly requires the approval of such a loan to be of such character as that, when the loan is made, the approval

proval may become a part of the records of the bank. We are dealing here with a question of power and not of the manner in which the power may be exercised. The course here pursued by the directors of the bank, as disclosed by the record, seems to have been to disregard the statute entirely and to permit loans to be made to its officers and employees without reference thereto; such loans being subject only to their subsequent approval. To hold that such conduct is lawful would result in a judicial repeal of the statute.

The damage as well as the injury to the bank was complete when Lindinger received the unauthorized loan. It could have immediately sued him and the appellant therefor. Corsicana National Bank v. Johnson, 251 U. S. 68, 40 S. Ct. 82, 64 L. Ed. 141. Of course, had Lindinger refunded the money, the appellant's liability therefor would have been discharged. The first bond, therefore, terminated as to Lindinger, when this misappropriation of three thousand six hundred dollars of the bank's money was discovered by it, which occurred at the time it was committed, if the appellant's contention that it was then known to the cashier and an active vice-president of the bank is true; if not, when the board of directors shortly thereafter formally approved the loan. Only recoverable liabilities on the first bond were brought into and secured by the second.

Hudson's first defalcation occurred in June, 1929, when he obtained either a new loan or increased the amount of a former loan not covered by the bond. The appellant's liability as to Hudson terminated when this defalcation became known to the bank. The board of directors knew of it when it approved the loan a short time thereafter, and it may be that knowledge of it was early acquired by an executive officer of the bank other than Hudson, with which knowledge the bank must be charged.

The only defalcation on the part of Watts occurred early in June, when he also obtained an unauthorized

loan of money, which was discovered by the bank when the board of directors a short time thereafter approved it. The approval, as hereinbefore said, did not relieve it of its illegality.

The only defalcations under the second bond were by Lindinger. The appellant says that this bond is not an employees' fidelity bond, but that it simply insures the bank against loss inflicted upon it by its employees of a specifically designated character. It will be unnecessary for us to decide this question, for the only defalcation thereunder here made is admitted by the appellant to be covered by the bond. That defalcation is by Lindinger on April 2, 1931, when he withdrew for his personal use three hundred dollars from the bank's cash box, leaving a cash item ticket therefor therein, which defalcation seems to have become immediately known to an active vice-president and the cashier of the bank. This bond, therefore, then terminated as to Lindinger, and that is the only item recoverable thereon.

The decree of the court below will be reversed, in so far as it affects the appellant, for further proceedings not inconsistent with this opinion.

Reversed and remanded.

ON SUGGESTION OF ERROR.

**Smith, C. J.,** delivered opinion on suggestion of error.

The decree of the court below herein was reversed on a former day, and the cause remanded. It appeared then that the appellee was probably entitled to a final judgment on some of the items sued for, but we were unable to arrive at any satisfactory conclusion relative thereto without the further assistance of counsel, the case not having been argued with the view to a judgment here for the appellee in event the court should hold that it was entitled to recover less than the amount awarded in the court below. That assistance has now been given.

In this connection we desire to suggest that where counsel for either party desire a final judgment in this court, in event the judgment or decree appealed from is reversed, they should specifically state in their briefs filed on the hearing what this judgment should be, and the reasons therefor.

The correctness of our former decision is challenged, but after mature consideration we have determined to adhere thereto.

The three bank officers whose fidelity was here insured are W. J. Lindinger, its president, L. A. Watts, its cashier, and T. W. Hudson, its assistant cashier. The defalcations by Watts and Hudson, on which recovery can be had under our former decision, are not now in dispute, and a decree will be entered here therefor. These defalcations on the part of Watts amount to one thousand six hundred seventy-five dollars, and on the part of Hudson to four hundred dollars.

As to Lindinger, and dealing now with the appellant's liability under the schedule employees' fidelity bond executed by it on December 28, 1928, Watts, the cashier, knew of each of Lindinger's defalcations when committed, and the first question to be here decided is whether this knowledge of Watts should be held to be constructive notice to the bank. It is true that ordinarily the knowledge of a bank's cashier is imputed to it, but that rules does not apply in favor of the surety on a bank employee's fidelity bond. This exception to the rule is supported by numerous authorities giving the reasons therefor, and is exemplified by the line of cases in which appear Fidelity & Casualty Co. v. Gate City National Bank, 97 Ga. 634, 25 S. E. 392, 33 L. R. A. 821, 54 Am. St. Rep. 440, and Fidelity & Deposit Co. of Maryland v. Courtney, 186 U. S. 342, 22 S. Ct. 833, 46 L. Ed. 1193.

The bank's board of directors, as stated in the former opinion, obtained notice of the transactions by Lindinger,

alleged to constitute breaches of his bond, on June 6, 1929, at its quarterly meeting then held, whereat it ap-. proved all of these transactions. These were:

May 15, 1929—Loan to himself not previously
authorized ............................................$3,600.00
May 31, 1929—Loan to himself not previously
authorized ...................................... 980.50
June 4, 1929—Loan to himself not previously
authorized ...................................... 2,640.00
March 27, 1929—Loan to Canty & Gautier .... 2,600.00
April 11, 1929—Henry LaForce note, discounted 208.07
April 29, 1929—Loan to Canty & Gautier ...... 600.00
May 13, 1929—Loan to Scranton Fish Company 2,000.00
May 15, 1929—Bennie Charlton note, discounted 900.00

The schedule employees' fidelity bond insured the bank against "such pecuniary loss as the employer shall sustain of money or other personal property through the fraud, dishonesty . .. . of or by any of the employees listed in the schedule forming part of this bond directly or in connivance with others," etc. The loans made by Lindinger to himself in violation of section 3812, Code 1930, were held, in our former opinion, to be dishonest acts for which the bond was liable.

Canty, Gautier, and Lindinger were partners owning a boat engaged in the fishing business. The money loaned Canty and Gautier by Lindinger was for the use of the partnership, Lindinger guaranteeing to them the payment of his pro rata thereof. The reason why Lindinger's name was not included in the notes as one of the makers thereof was that he preferred it not to be so, because he was an officer of the bank. While these loans were not made on Lindinger's "own note or obligation" (section 3812, Code 1930), he was indirectly obligated to the payment thereof, and whether expressly so intended or not was but a scheme to defeat the prohibition of the statute and within its intendment. To hold otherwise would render the statute a nullity because of the easy manner by

which officers and employees of a bank could do indirectly that which it expressly forbids. These loans, therefore, come within the same category as the loans by Lindinger to himself alone.

The Scranton Fish Company was a corporation, of which Lindinger, Canty, and Gautier each owned a third of the stock. Lindinger was not an officer of the corporation, but in borrowing the money loaned it by Lindinger for the bank he and the other two stockholders determined whether the loan should be applied for, and Lindinger himself determined whether the bank should lend it. This loan is not within the provisions of the statute. It is not necessary for us to determine whether it is of such a fraudulent or dishonest character as to come within the terms of the bond. No crime was committed by Lindinger in making it, and the bank had the right to approve and adopt it; this it did through its board of directors, therefore, there is not liability on the bond therefor. The Bennie Charlton and Henry LaForce notes were owned by the Scranton Fish Company and discounted to the bank, Lindinger represented the bank in discounting the notes and participated with the other two stockholders of the fish company in determining whether the notes should be sold to the bank. What has just herein been said with reference to the loan to the Scranton Fish Company applies here.

This brings us to the appellant's liability for Lindinger's alleged defalcations under the second, or banker's blanket, bond. These are:

February 25, 1931—Loan to himself (Hibernia Bank item) .................................... $325.77

March 21, 1931—Loan to Fairyland Golf Course   50.00

April 2, 1931—Loan to himself ............... 200.00

April 28, 1931—Loan to Fairyland Golf Course ..  52.36

April 28, 1931—Loan to himself (Cincinnati Boat item) ...................................... 703.64

This bond became effective at noon on the 25th day of February, 1931. The evidence is silent as to what hour of February 25, 1931, the Hibernia Bank transaction took place, and the burden was on the appellee to prove that it took place subsequent to noon of that day. There can be no recovery for this item. The Fairyland Golf Course was a partnership composed of Lindinger's wife and others, but in which he had no interest. The loans to this partnership were not within the statute and are in the same category as the Scranton Fish Company, La-Force, and Charlton notes; no recovery can be had therefor.

The loan of two hundred dollars by Lindinger to himself comes within our former opinion. This leaves only the Cincinnati boat item of seven hundred three dollars and sixty-four cents undisposed of. Counsel are in hopeless conflict as to what the amount of this item should be, and we are wholly unable ourselves to determine it on the present record. It seems that the appellant is probably liable for something thereon, so that all we can do with reference thereto is to remand the cause to the lower court for the determination thereof.

A final decree will be rendered here for the appellee for the items hereinbefore said to constitute liabilities on the bonds, and the cause will be remanded for trial only as to the appellant's liability on the Cincinnati boat item.

Sustained in part and overruled in part.