GEORGE J. RICAU & CO., Inc., v. INDEMNITY INS. CO. OF NORTH AMERICA et al.

No. 16258.

Court of Appeal of Louisiana. Orleans.
March 22, 1937.

Jewell A. Sperling, of New Orleans, for appellant.

. Henry & Cooper, of New Orleans, for appellee Indemnity Ins. Co. of North America.

JANVIER, Judge.

George P. Eberle, as liquidator of George J. Ricau & Co. Inc., seeks judgment against a former employee, Homer H. Russell, and against Indemnity Insurance Company of North America, basing the claim primarily on an alleged shortage in the accounts of Russell. The claim against the insurance company is made because of the fact that that company was the insurer in a fidelity bond guaranteeing the faithful performance by all employees of their duties. The defense relied upon is that the requirements of the bond as to giving of notice of loss were not complied with in that the form of the notice and claim were not proper and in that both were filed after the time within which they might have been presented under the terms of the bond had expired.

In the court a qua there was judgment in favor of plaintiff against Russell for a portion of the amount claimed, but the suit against the insurer was dismissed. Plaintiff has appealed.

It is necessary that we recite chronologically the facts. The bond was issued on August 4, 1931, by the Alliance Casualty Company for a period terminating July 30, 1932. At that time Allen Mehle & Co., Inc., were the agents of the insurer and the bond was issued through that agency. Later the present defendant, Indemnity Insurance Company of North America, also at that time represented by the Mehle Agency, assumed the obligation of the original insurer. That assumption is in no way involved among the issues presented here. On March 10, 1932, while the bond was in force, the Mehle Company ceased to be agents of the insurer and the notice of the termination of that agency was filed with the secretary of state of Louisiana in accordance with the statutes on the subject, but no notice of that agency termination was given directly to the Ricau Company, nor to its liquidator. . The Mehle Company was appointed agent for another insurance company, the American Bonding Company, which issued similar insurance protection, and, prior to the expiration of the date of the first-mentioned bond, the Mehle Agency, at the request of the Ricau Company, caused to be issued a new fidelity bond of American Bonding Company, effective at the termination of the first bond. It will be recalled that the first bond under which the defendant company assumed responsibility expired by limitation on July 30, 1932. At the time of its expiration no claim of any kind had been made thereunder, and, in fact, it is not pretended that notice of any kind referring to any loss was given until January 23, 1933, at which time the liquidator of Ricau & Company wrote to the Mehle Agency, agent for the American Bonding Company and former agent for the defendant, concerning certain policies not of interest here and concluding the letter with the following paragraph: "We also wish to advise you that in the process of an audit in our books there has been found discrepancies that may finally result in considerable loss to this Company, and as we have the bookkeeper and Cashier, H. H. Russell, bonded through you in the American Bonding Co., policy #553915 and formerly in the Alliance Casualty Co., policy #AS-366, we want to put you on notice of the situation as far as we now are able. Will give you complete facts when the Auditor has completed his report."

It will be noted that that letter made no reference to dates at which discrepancies had taken place, nor even to whether they had occurred during the existence of the expired bond. Two days later the Mehle Agency replied to that letter as

follows: "We note what you have to say about Cashier H. H. Russell, bonded under American Bonding Company policy #553915, and as we have thirty days from date of discovery of any act that might permit you to make claim under your policy, we suggest that you await asking us to notify the Company until you make a closer and deeper search. It is always our object and wish to assist young people who are in trouble, embarrassment or want, as we rather feel something is due for their future career."

Apparently, the author of the above set forth letter gave no thought to the question of whether the discrepancies had occurred during the period covered by the first bond, but obviously considered the notice, such as it was, as applying only to a possible claim under the second bond issued by American Bonding Company. Accordingly the Mehle Agency gave no notice to defendant company, nor, in fact, to any other company, waiting for confirmation and for a more detailed analysis of the loss. On May 25, 1933, which was almost ten months after the bond of defendant had expired by limitation, the liquidator of Ricau & Co. again wrote to the Mehle Agency and then, for the first time, called attention specifically to the fact that there had been discrepancies during the period covered by the bond in which defendant was obligor. That letter read as follows:

"The audit report which will be submitted to the stockholders at a meeting tomorrow shows that the shortage that the bookkeeper is responsible for will apply on both of the bonds, and it will become necessary to file proof of claim separately on each of these bonds.

"Please take this up with the adjusters that represent these two bonding companies and advise me of the proper procedure to put the claim of George J. Ricau & Co. Inc. in shape for adjustment.

"I am still hopeful that the young man's relatives will take care of the matter, but at the same time wish to have everything in line to protect the interest of the stockholders and creditors."

In compliance with this letter the Mehle Agency communicated with Mr. H. J. Eberhardt, the adjuster of defendant insurer, and he, on June 3, wrote the Ricau Company liquidator as follows: "Your letter of May 25th addressed to Mr. Mehle has been referred to this office for our attention. We wish to advise that we are making an investigation of this loss with the understanding that we are not waiving any of the rights under the terms of our Bond."

On June 19, after receiving other letters, including one from the attorney for the Ricau liquidator, the said adjuster of the defendant wrote to the attorney as follows:

"We are in receipt of copy of your letter of July 12th to Mr. Eberhardt, enclosing what purports to be a statement of items chargeable to Homer H. Russell, which we are returning herewith as you indicate that it is intended to be in the nature of proof of loss.

"As we have previously stated, the rights to file claim under the bond we executed for Homer H. Russell and in favor of George J. Ricau and Company, Inc. have long since expired, in view of which we are unable to recognize liability, reserving all our rights and defenses."

This suit followed in due course.

In maintaining that rights under the bond had expired, defendant company relied upon certain stipulations contained in the bond itself. Among those is one to the effect that "no claim shall be payable hereunder that shall be filed with the Surety after the period of six months from the expiration or cancellation of any guarantee under this bond, or after a period of six months from the death, resignation or removal of any of said Employees occurring prior to the expiration or cancellation of this bond." Another of those stipulations requires that "* * * the Employer, on * * * becoming aware of any act which may be made the basis of any claim hereunder, shall immediately give the Surety notice thereof in writing, by a registered letter, addressed to the Alliance Casualty Company, Philadelphia, Pa., and shall, within ninety days after its so becoming aware of such act as aforesaid, file with the surety its itemized claim hereunder at its own cost and expense with full particulars thereof duly sworn to."

It is asserted that failure to comply with any or all of the stipulations has resulted in the loss by the employer or the liquidator of any right which may have originally existed. Our attention is directed to the word "immediately" in the requirement that notice must be given immediately the employer becomes aware of any act which may form the basis of a claim and also to

the provision which requires that such notice shall be given by "registered" letter, which shall be addressed to the home office of the insurer.

Plaintiff makes little of the requirement that the letter be registered, maintaining that if such letter as is required is admittedly actually received the failure to register the said letter cannot be relied upon as a defense, and also asserts that, though the bond requires that the notice be given to the insurer itself and at its home address, this requirement has been superseded by a statute of Louisiana, Act No. 37 of 1921, Ex.Sess. which provides in section 1 that, wherever a notice is required by such a bond as is involved here, even though the bond stipulates that it shall be sent to the home office, nevertheless it may be sent "to any duly authorized agent of said bond company in the State of Louisiana." Relying, then, upon that statute as overriding the requirements of the bond, plaintiff maintains that notice was given through the letters of January 23 and May 25 directed to the Mehle Agency, which, so far as plaintiff knew, was still the authorized agent of defendant company.

In passing, it may be noted that even the statute relied upon by plaintiff does not do away with the necessity that the notice be sent by "registered" mail, in any event whether "to the head office of the bond company," or "to any duly authorized agent." Be that as it may and, assuming for the moment that the failure of plaintiff to make proper and timely compliance with the other policy requirements had not the effect of putting an end to the claim, we pass to a consideration of whether the notice to the Mehle Agency may be considered as notice "to any duly authorized agent of said bond company in the State of Louisiana."

It must be conceded that, as a matter of actual fact, the Mehle Agency had long since ceased to be agent for defendant company and was not its agent when, on January 23, it received the very general letter and indefinite report that probably there had been a loss under some bond at some time. But plaintiff declares that, since that agency had represented the defendant in issuing the bond and in substituting the defendant for the original insurer, in the absence of actual knowledge of the termination of that agency, he was justified in assuming that the agency continued and that the former agents still had authority to represent the former principal. Counsel for plaintiff points to Corpus Juris, vol. 2, p. 539, § 165, where it is said: "As a general rule a revocation of authority does not become effective as between the principal and third persons subsequently dealing with the agent as such until they receive notice thereof. By conferring the authority the principal gives third persons who are aware of it the right to deal with the agent according to its terms on the principal's account, and they have a right to assume, until they are otherwise informed, that the authority continues as it was originally conferred."

There can be no doubt of the correctness of those principles as applied generally to the rights of third persons who rely upon an admittedly established relationship of principal and agent and who have not been put on notice, actually or constructively, of the termination of the agency. But where the law itself requires that the relationship of the agent to the principal be publicly set forth and, in fact, publicly recorded, a compliance with the legal requirements as to the termination of the relationship and the recordation in the proper records of that termination effects constructive notice to all persons that the relationship has terminated. Any other rule would place an undue burden upon an insurer who might have outstanding innumerable bonds or policies issued for long terms, since it might require that actual notice of the termination of each agency, whether large or small, be communicated to every policyholder or bondholder who might hold outstanding the obligation of the insurer, even though many of the bonds or policies might have expired by limitation. If plaintiff's rights have not been lost, then the requirement as to timely notice of loss and the provision that no claim will be entertained unless made within the time fixed in the bond mean nothing at all. An insurer may then remain potentially liable long after the stipulated expiration. Must it continue for this reason to send notices of termination of agencies to former bondholders or policyholders on the theory that, possibly, some loss may later be discovered? Is it not more reasonable to hold, particularly after such expiration, that the bondholder may no longer rely upon the fact that the person upon whom he desires to serve notice of loss was at one time agent of the insurer? Is it not more reasonable to say that in such case he must obtain from the proper

public official correct information, which information, under the law, must be recorded in the office of that official?

The many cases relied upon by plaintiff do no more than hold that some form of notice of the termination must be given to persons who dealt with the former agent. None of them holds that notice must be actually given personally and plaintiff overlooks the fact that constructive notice may often be held to serve the purpose of actual notice. A case referred to by all of the text-writers and cited in many of the decisions holding that notice of the termination of agency must be given is Southern Life Insurance Company v. McCain, 96 U.S. 84, 86, 24 L.Ed. 653. The principal question there was not what form of notice must be given, but whether an insurance company, which had a private understanding with its general agent limiting his authority, could be heard to contend, as against a third person dealing with the agency in a matter in which general agents were usually authorized to act, that the said general agent had no such authority. But even in that case and at that time, 1877, the Supreme Court of the United States did not say that actual notice of the termination of authority or of the limitation of authority was necessary, but merely that, where the authority of an agent is revoked, "parties dealing with him in that business have a right to rely upon the continuance of his authority, until in some way informed of its revocation." We particularly note the words "in some way."

We feel, then, that where the statute of the state in which the agency does business requires that the authority of the agent be recorded publicly and that its termination be likewise recorded, the recordation of the said termination in the proper public office affects all persons and that no one may later be heard to say that he was not personally notified that the agency had been terminated.

Act No. 105 of 1898, as amended, plainly requires that the names of all agents of such companies as defendant be registered with the secretary of state of Louisiana and that, upon the termination of the authority of any such agent, that termination be recorded with the secretary of state. The record shows that the authority of the Mehle Agency as agent was terminated on the records of the secretary of state of Louisiana on March 1, 1932. As soon as that termination of authority was filed there was no longer any reason for the Ricau Company, or its liquidator, to fail to note that the Mehle Agency no longer represented the defendant, or its predecessor, the Alliance Casualty Company, and any mistake in that regard resulted from failure to take proper steps to ascertain the true facts.

Counsel points to In re Pelican Insurance Company in Liquidation, 47 La.Ann. 935, 17 So. 427, in the syllabus of which is found the following: "A party who obtains a policy from a former agent of the company, with whom he had done business, and who has in his possession blank applications and policies, will be protected in the absence of actual knowledge on his part that the party acting as agent was in fact not the agent of the company."

But that case was decided in 1895, three years before the enactment of the statute requiring the registration of insurance agents, and it was because of the fact that there was no public notice at that time required that the court decided that actual private notice should have been given. Note the following language in the opinion: "The company withdrew from the state, and so informed its general agent, who was instructed to return to the home office all blank policies, etc. No public notice was given of this withdrawal, nor was any information conveyed, directly or constructively, to W. F. Grubbs, that the company had ceased business in North Carolina."

But, even if we felt that, because of the failure of the insurer to give actual notice of the termination of the agency, such notice as was given should be considered as given to an authorized agent, still there could be no recovery because of the two provisions of the bond to which we have already referred: First, that notice must be given immediately; and, second, that "no claim shall be payable hereunder that shall be filed * * * after a period of six months from the expiration * * * of any guarantee under this bond." The letter dated January 23, we feel, could not be considered a notice of loss under the bond of defendant, insurer. The fact that the Alliance Casualty Company was incidentally mentioned in the letter does not indicate that the letter was intended to be a notice to that company or its successor of any loss, particularly since no dates or details were given. When, for the first time, on May 25, the attention of the Mehle Agency was called to the fact

that there had actually been a loss within the term covered by the bond, a period of almost ten months had elapsed since the expiration of the bond. It was then too late for any claim to be made.

We deem it quite proper that there should be in bonds of this kind a requirement that loss must be discovered within some fixed period after the stipulated expiration of the bond. Such a stipulation makes it necessary that the bondholder make an examination of his records within a reasonable time after the termination, and we do not see that any undue hardship results.

Then, too, the bond required, as we have said, that notice be immediately given, and, since it is conceded that the first information of a possible discrepancy came to the knowledge of the Ricau Company early in January, it cannot be said that notice thereof on May 25 was "immediate," however liberally that word may be interpreted.

For the reasons given, it is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, J., dissents.