STATE BANK OF VIROQUA, Appellant, v. CAPITOL INDEMNITY CORPORATION, Respondent.

*No. 215. Submitted November 27, 1973.—Decided January 21, 1974.*
(Also reported in 214 N. W. 2d 42.)

For the appellant the cause was submitted on the briefs of *William J. Sauer* of La Crosse.

For the respondent the cause was submitted on the brief of *Bruce Gillman* and *Arthur, Tomlinson & Gillman, S. C.,* all of Madison.

HALLOWS, C. J. On March 26, 1969, while the bond was in force and effect, the bank loaned $8,275 to one James DeLap who secured the loan with an agreement whereby Viola Motors, Inc., sold eight hay balers to him and one Leon Mellem. The agreement was assigned by Viola Motors, Inc., to the bank. About four months later, in July of 1969, there was a default on the loan and the bank resorted to the security and made demand on Leon Mellem for payment. Mellem refused liability on the ground his signature had been forged to the document. The following month, DeLap, Mellem, and Viola Motors, Inc., were adjudged bankrupts. At a bankruptcy hearing in October of 1969, DeLap admitted he had forged Mellem's signature to the security agreement.

Late in October of 1970, a year later, a representative of Capitol Indemnity while discussing with the bank's officers a proposed increase in the policy limits of the blanket bond was advised of this forgery and asked if it might have been covered by the bond. Prior to that time the bank was ignorant that the bond might cover losses occasioned through fraud and consequently had not notified Capitol Indemnity of the loss or filed a proof of loss. Fifteen days after this conference, the bank gave oral notice of the loss. After a month of negotiation, Capitol Indemnity denied coverage. On March 12, 1971, the bank commenced an action to recover on the policy. In its amended answer, Capitol Indemnity denied coverage and alleged a lack of notice and a failure to file

proof of loss. Other evidentiary facts giving rise to the questions of law decided by the trial court are set forth in the various affidavits supporting and opposing the motion for summary dismissal.

Banker's blanket bonds are fairly standard contracts in the insurance field. We recently considered a question of coverage under one in *Racine County Nat. Bank v. Aetna Casualty & Surety Co.* (1973), 56 Wis. 2d 830, 203 N. W. 2d 145.[1] The notice provision of the bond issued by Capitol Indemnity, which is the central point of issue on this appeal, provided:

"The foregoing agreement is subject to the following conditions and limitations:

" . . .

"**Loss—Notice—Proof—Legal Proceedings**

"Section 3. At the earliest practicable moment after discovery of any loss hereunder the Insured shall give the underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars. Legal proceedings for recovery of any loss hereunder shall not be brought prior to the expiration of sixty days after such proof of loss is filed with the Under-

---

[1] The coverages, conditions and limitations of financial institution bonds are the results of negotiations between the Surety Association of America, representing the insurers, and various organizations representing the insureds (the American Bankers Association represents commercial banks with reference to banker's blanket bond standard forms 2, 24 and 28. *See* Digest of Bank Insurance published by Insurance and Protective Committee, the American Bankers Association). These bonds are not the usual contracts of adhesion and the familiar rule of interpreting a contract strictly against the insurer and liberally in favor of the insured should not apply. *See generally,* Shure, *Contract Provisions For Notice And Proof of Loss,* 1967 ABA Section of Insurance, Negligence and Compensation Law Proceedings 95, fn. 2. The contrary is stated to be the rule, however, at 13 Appleman, *Insurance Law and Practice,* pp. 228–237, sec. 7504. *See also:* 1 Couch, *Insurance* (2d ed. 1959), pp. 805–808, sec. 15:76.

writer nor after the expiration of twenty-four months from the discovery of such loss . . ."

The provisions of the bond relating to coverage for losses sustained through forgery are not at issue in this case, the bank claiming only that coverage was doubtful as a justification for not giving a timely notice.[2]

The trial court held the giving of notice fifteen months after discovery of the forgery was too late as a matter of law and constituted noncompliance with the contract unless excusable. In reaching this conclusion, the trial court was not without support.[3] We conclude the bank's

---

[2] The bank's claim against Capitol Indemnity was based on the following coverages:

"(D) Any loss through FORGERY OR ALTERATION . . ."

"(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor . . . ."

[3] *See: National Discount Co. v. United States Fidelity & Guaranty Co.* (1905), 47 Misc. 678, 94 N. Y. Supp. 457; *George J. Ricau & Co. v. Indemnity Ins. Co.* (La. App. 1937), 173 So. 217; *Michigan Savings & Loan Asso. v. Missouri, Kansas & Texas Trust Co.* (1898), 73 Mo. App. 161; *Muncie Banking Co. v. American Surety Co.* (7th Cir. 1952), 200 Fed. 2d 115; *Mount Vernon Bank & Trust Co. v. Aetna Casualty & Surety Co.* (D. C. Va. 1963), 224 Fed. Supp. 666; *Hartford Federal Savings & Loan Asso. v. Aetna Casualty & Surety Co.* (1964), 25 Conn. Supp. 418, 206 Atl. 2d 650. *See also:* Postula, *What Constitutes Timely Notice and Proof of Loss Under Fidelity and Financial Institution Bonds,* 1967 ABA Section of Insurance, Negligence and Compensation Law Proceedings 108, 110, 111; Kenney, *Notice—Its Place in Fidelity Insurance,* 1955 ABA Section of Insurance, Negligence and Compensation Law Proceedings 132.

argument that a question of fact was raised concerning the reasonableness of the delay and therefore it was entitled to a jury trial is without merit. Likewise, there is no merit to the bank's argument that Capitol Indemnity is estopped to raise the defense of failure to give timely notice or waived it because it denied liability. This argument would have merit if Capitol Indemnity had denied coverage within the time the notice was required to be given or had induced the bank to postpone giving notice by promises or action upon which the bank relied. Here, the bank was not misled in its failure to give timely notice as required by the bond.[4] Capitol Indemnity denied liability only after the expiration of the time within which notice should have been given, and such denial has no retrospective effect.

The bank claims error on the theory that the language in the bond requiring notice to be given at "the earliest practicable moment" means within a reasonable time under all the circumstances and such circumstances in this case consist of the uncertainty of coverage, the lack of a forfeiture clause and the lack of prejudice to Capitol Indemnity because of the delay.

In construing the effect of a provision in fidelity bond or policy calling for notice of loss within a prescribed period of time (such as "at the earliest practicable moment after discovery of a loss"), some courts have taken the position that unless a fidelity bond or policy specifically provides that the notice of loss provision is

---

[4] See Anno. (1952), Fidelity Bond—Notice of Loss, 23 A. L. R. 2d 1065, 1101, 1102, sec. 16; 14 Couch, Insurance (2d ed. 1965), pp. 272, 273, sec. 49:813, which discusses the more typical situation of noncompliance with a proof-of-loss provision and states the rule to be that an insured cannot claim waiver excuses noncompliance with a proof-of-loss provision in a fidelity bond where the conduct allegedly constituting waiver occurred subsequent to the expiration of time within which proof was required.

a condition precedent, or that failure to comply therewith will effect a forfeiture of the bond or discharge the surety, failure of compliance will not bar recovery.[5] Some of these courts, however, qualify such holding by requiring a finding that the noncompliance did not so prejudice the surety that it would be inequitable to permit recovery.[6] Under this minority view, the notice of loss provision merely creates a covenant or promise on the part of the insured. However, most courts have regarded the notice of loss provision as a condition precedent even though the contract does not expressly say so or contain a forfeiture clause and have held that noncompliance will defeat recovery on the bond.[7] The rationale behind the

[5] *See* Anno. (1952), *Fidelity Bond—Notice of Loss*, 23 A. L. R. 2d 1065, 1075, sec. 5; *American Nat. Bank & Trust Co. v. United States Fidelity & Guaranty Co.* (D. C. Ala. 1934), 7 Fed. Supp. 578; *National Surety Co. v. Julian* (1933), 227 Ala. 472, 150 So. 474; *Dixie Fire Ins. Co. v. American Bonding Co.* (1913), 162 N. C. 384, 78 S. E. 430; *Peoples Loan & Saving Co. v. Fidelity & Casualty Co.* (1929), 39 Ga. App. 337, 147 S. E. 171; *Peoples Bank v. Aetna Casualty & Surety Co.* (1930), 225 Mo. App. 1113, 40 S. W. 2d 535; *Fidelity & Deposit Co. v. Merchants' & Marine Bank* (1933), 169 Miss. 755, 151 So. 373, modified on other grounds 169 Miss. 771, 154 So. 260; *Hartford Accident and Indemnity Co. v. Hattiesburg Hardware Stores* (1951), 49 So. 2d 813; *United States v. United Bonding Ins. Co.* (5th Cir. 1970), 422 Fed. 2d 277, applying Florida law; *see also:* Shure, *Contract Provisions For Notice And Proof After Discovery Of Loss Are Conditions Precedent To Insured's Right of Recovery* (hereinafter "Shure"), 1967 ABA Section of Insurance, Negligence and Compensation Law Proceedings 95, 99, fn. 15; Clark, *The Law of Fidelity Bonds* (hereinafter "Clark"), 28 Ins. Counsel J. 210, 213 (1961); 13 Couch, *Insurance* (2d ed. 1965), pp. 770, 771, sec. 49:236.

[6] *See* 13 Couch, *Insurance* (2d ed. 1965), pp. 770, 771, secs. 49:236 and 49:237.

[7] Anno. (1952), *Fidelity Bond—Notice of Loss*, 23 A. L. R. 2d 1065, 1071, sec. 3. This annotation contains a listing of cases supporting the majority rule that noncompliance with the notice

majority rule is to give the earliest opportunity to the surety to investigate, minimize and recoup losses while the time is ripe for such purpose, and to give the surety a reasonable opportunity to protect its rights.[8] Under this view, the failure to comply with the condition precedent to liability vitiates the insured's claim regardless of whether or not prejudice to the surety resulted from the delay or the relative carelessness of the insured in giving notice or the insured's ignorance of coverage under the bond.

The bank urges this court to adopt the minority view and questions whether the majority view is in fact what the courts have held as distinguished from what they have said. We do not agree with the bank's analysis of the cases or with the merit of the minority view. Among our own decisions, we find relevant *Bank of Kaukauna v. Maryland Casualty Co.* (1940), 234 Wis. 321, 291 N. W. 319, in which the bank brought an action on a banker's blanket bond to recover for loss on account of an embezzlement by the cashier. The bond had been cancelled but provided that if a loss should be discovered within one year after cancellation, the loss would be covered. The bond provided by express condition that "at the earliest practicable moment, and at all events not later than ten days" after discovery of a loss notice had to be given. The bank failed to give notice within ten days after discovery of the loss within the year of cancellation of the bond. This court ordered the trial court to grant the defendant's motion for summary judgment dismissing the complaint. The court did not base its holding of non-

---

of loss provision in a fidelity bond or policy bars recovery thereunder. The cases are drawn from some 27 jurisdictions.

*See also:* Shure, *supra,* note 1, p. 97; Clark, *supra,* note 5, p. 213; 45 C. J. S., *Insurance,* p. 1329, sec. 1092.

[8] Keeton, *Insurance Law,* pp. 445–447, sec. 7.2 (a); Shure, *supra,* note 1, p. 97.

liability on the presence of a forfeiture clause or prejudice to the surety but on the terms of the contract.

The provision for timely notice in an insurance policy or any other contract raises the question of whether a contract means what it says or whether a contract, to make time essential must be phrased in "terms of art," *i.e.*, to emphasize the importance of the intention of the makers of the contract expressly stating compliance with the notice provision is a condition precedent to liability or that the contract is void or forfeited for noncompliance.

The bank relies on a line of fire insurance cases which hold that the requirement in a fire insurance policy for the filing of proof of loss is not a condition to liability but merely postpones the maturity of the claim and does not work a forfeiture of the policy. This doctrine was explained in *Ciokewicz v. Lynn Mut. Fire Ins.* (1933), 212 Wis. 44, 248 N. W. 778, and questionably applied to notice of loss and is an unusual doctrine in the insurance field and confined to fire cases. In *Britz v. American Ins. Co.* (1957), 2 Wis. 2d 192, 86 N. W. 2d 18, this court had before it a claim for the value of a motor tractor which defendant had insured against loss by theft. The policy required the insured to "give notice thereof as soon as practicable to the company or any of its authorized agents." The court followed its long-standing rule that where notice of loss is required in the policy, timely notice to the insurer is a condition precedent to the maintenance of an action on the policy, notwithstanding the absence of a forfeiture clause, and the failure to perform the condition precedent constituted a defense to liability except for waiver or estoppel, citing *Foster v. Fidelity & Casualty Co.* (1898), 99 Wis. 447, 75 N. W. 69; *Underwood Veneer Co. v. London Guarantee & Accident Co.* (1898), 100 Wis. 378, 75 N. W. 996; and *Bachhuber v. Boosalis* (1930), 200 Wis. 574, 229 N. W. 117.

The validity of the holding in the *Ciokewicz Case* in respect to notice of loss was questioned in *Britz:*

"The rule regarding the effect of failure to furnish *proof of loss* is different. There is no great hurry there, such as there is when loss occurs and the insurer must be notified so that it may proceed, while the evidence is fresh and available, to investigate and, if possible, to reduce or prevent loss. Historically, failure by the assured to furnish proof of loss within a stipulated time has only postponed maturity of the claim until the proof was furnished. It was so held in *Vangindertaelen v. Phenix Ins. Co., supra, Flatley v. Phenix Ins. Co.* (1897), 95 Wis. 618, 70 N. W. 828, and *Klingler v. Milwaukee Mechanics Ins. Co.* (1927), 193 Wis. 72, 213 N. W. 669. It was these cases dealing with proof-of-loss derelictions which were cited as authority in a notice-of-loss case, *Ciokewicz v. Lynn Mut. Fire Ins. Co.* (1933), 212 Wis. 44, 49, 248 N. W. 778, . . .

"Tardy *proof of loss* is different in its effect from failure to give *notice of loss* and we think now that the precedents of the notice-of-loss cases might better have been followed in the *Ciokewicz Case, supra,* than the precedents of the proof-of-loss cases . . . ."

In *Britz,* this court refused to extend its holding in the *Ciokewicz Case* beyond the facts of that case. Likewise, we refused to extend the questionable rule of *Ciokewicz* to the other types of insurance and left it strictly limited to fire insurance cases where the defense of prejudice in fact to an insurance company can be asserted.

The rule in respect to automobile liability insurance is governed by sec. 204.34 (3), Stats.,[9] and sec. 204.29.[10]

---

[9] "204.34 **Provisions of motor vehicle policies** . . .

"(3) No policy of insurance, agreement of indemnity or bond as provided in subsection (1) shall limit the time for the giving of notice of any accident or casualty covered thereby to a period less than that provided in subsection (1) of section 204.29. Failure to give such notice shall not bar liability under such policy of insurance, agreement of indemnity or bond as provided in subsection (1) if the insurer was not prejudiced or damaged by such failure,

As pointed out by the trial court in its opinion, "these statutes respectively provide that lack of notice under a motor vehicle policy is no defense unless there is prejudice and that all insurance policies issued by a licensed accident or casualty company must give the insured at least twenty days within which to serve a notice of injury. There are no comparable statutes which specifically apply to surety bonds or to banker's blanket bonds such as the kind involved in the case at bar." We hold that where the giving of timely notice is required by the banker's blanket bond prior to the maturity of the liability of the insurer, such requirement is a condition precedent in fact to liability whether or not expressly so stated and is to be enforced as written whether or not its importance is emphasized by further language that noncompliance works a forfeiture or voids the policy.

Ignorance of policy provisions or a belief that coverage is questionable is no excuse for failure to give notice of loss under the banker's blanket bond. In case of questionable coverage, notice of loss to the insurance company would start the investigative process in motion and resolve the uncertainty of coverage. As for ignorance of coverage, a bank should know its business and the ordinary terms of standard insurance contracts applying to banking business. The existence of such ignorance on the part of a bank would seem to be inexcusable and unreasonable.

---

but the burden of proof to so show shall be upon the person claiming such liability."

[10] "204.29 **Notice of injury; service.** (1) No licensed accident or casualty insurance company in Wisconsin shall limit the time for the service of any notice of injury to less than twenty days, except as provided in sec. 204.31.

"(3) The deposit in any post office by or for the insured of a registered, postage prepaid envelope, containing the proper notice of injury within twenty days after the injury addressed to the company, issuing the policy or certificate, shall be a sufficient service of notice of injury."

The fact that Capitol Indemnity was not prejudiced is irrelevant. The contract language requiring timely notice of loss is designed to prevent prejudice or harm to the insurer. It is a fact of life in the insurance field that a timely notice of loss is important. It is a notice of loss that starts the investigation by the insurance company while the evidence is fresh and gatherable. Insurers are entitled to contract for this protection.

*By the Court.*—Judgment affirmed.