**John J. BOGUSEWSKI, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**Civil Action No. 96–C–808.**

United States District Court, E.D. Wisconsin.

Oct. 10, 1997.

Steven J. Lownik, Schober & Radtke, New Berlin, WI, for Plaintiff.

Richard E. Ceman, Jr., Bascom Law Offices, Milwaukee, WI, for Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT TO THE PLAINTIFF

REYNOLDS, District Judge.

John J. Bogusewski ("Bogusewski") brought this suit under 29 U.S.C. § 1132(a)(1)(B) to collect the proceeds of a long-term disability insurance policy, the premiums for which he has paid the defendant Life Insurance Company of North America ("LINA") since 1988. Before the court is LINA's motion for summary judgment. The key issue in this case is one of first impression in the Seventh Circuit: whether the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. § 1001, et seq., preempts Wis.Stat. § 631.81, which codifies the "notice-prejudice rule" by which an insurer may only deny benefits if a delay in notice or proof of loss prejudices the insurer.

LINA's motion is denied because ERISA does not preempt § 631.81 and, therefore, if Bogusewski can show that his failure to timely file a proof of loss did not prejudice LINA, his proof of loss would be deemed timely filed. Because Bogusewski's disability and the lack of prejudice to LINA are undisputed, the court finds that summary judgment for plaintiff Bogusewski is appropriate.

### FACTUAL BACKGROUND

Bogusewski acquired this disability coverage through a "Group Long Term Disability Income" policy ("LINA policy") which he purchased through his employer State Farm Insurance Company ("State Farm"). Since 1988, a premium of $23.94 was deducted from each of Bogusewski's paychecks. Despite having signed an enrollment card for the disability coverage, Bogusewski did not know of the existence of the LINA disability policy. Bogusewski assumed the payroll deductions were actually paying for disability benefits under State Farm's retirement plan.

In October 1991, Bogusewski became permanently disabled. Following his injury, Bogusewski was involved in discrimination and workers' compensation litigation. The settlement of these claims required Bogusewski to file for Social Security disability benefits as provided by State Farm's retirement plan. The Social Security decision granting him benefits occurred in April 1995, and Bogusewski and State Farm completed their settlement negotiations in December 1995. In November 1995, State Farm's personnel services supervisor advised Bogusewski of the existence of the LINA policy. Bogusewski applied for benefits under the policy November 24, 1995.

LINA denied the claim based upon the policy's proof-of-loss clause which read:

Written proof of loss must be furnished to the Insurance Company [LINA] at its Home Office within 90 days after the date of the loss for which claim is made. Failure to furnish written proof of loss within that time will neither invalidate nor reduce any claim if it be shown that it was not reasonably possible to furnish written proof of loss within that time and that written proof of loss was furnished as soon as was reasonably possible.

(Def.'s May 16, 1997 Br., Ex. 8.)

Bogusewski brought this lawsuit in Wisconsin Circuit Court for the County of Waukesha. LINA removed the case to this court based on federal question jurisdiction under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

### SUMMARY JUDGMENT STANDARD

The court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions, and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of asserting the absence of any dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

To avoid summary judgment, however, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates that the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2551–52.

To determine whether material facts are disputed so as to preclude the entry of summary judgment, the court relies on the parties' proposed findings of fact. *See generally* Local Rule 6.05 (E.D.Wis.). The moving party must submit detailed factual propositions in accordance with Local Rule 6.05(a). The non-moving party, must specifically respond to movant's proposed findings; if findings are disputed, evidentiary support for the dispute must be cited. Local Rule 6.05(b)(1). A responding party may also submit additional factual propositions. Local Rule 6.05(b)(2). When there is no objection to proposed findings of fact, the court accepts them as true. Local Rule 6.05(d). At its core, this is the stage of the litigation in which parties are required to demonstrate that they have sufficient relevant evidence to offer to allow a fact-finder to apply the law and find in their favor.

## DISCUSSION

### A. The Language of the LINA Policy

■ It is undisputed that Bogusewski filed no written proof of loss with LINA until at least four years after becoming disabled. Relying on the policy language, Bogusewski's first argument is that it was "not reasonably possible" to file earlier because he did not know the policy existed. The court is well aware that it is fiction to believe that the average consumer [1] will memorize each nuance of every legally binding document he or she signs or by which he or she is bound. Nonetheless, the court cannot find that Bogusewski's ignorance of a policy's existence for four years following the onset of a disability renders proof of loss "not reasonably possible." Specifically, while such ignorance may render timely proof impossible, this impossibility, under the instant facts is not reasonable within the meaning of the LINA policy's proof-of-loss clause.

Wisconsin, like most jurisdictions, has somewhat ameliorated the harsh effects of the common law's effects on insurance consumers. Nonetheless, flat-out ignorance of coverage afforded by a policy with which the insured should have had some familiarity, is unreasonable. *See e.g., State Bank of Viroqua v. Capitol Indem. Corp.,* 61 Wis.2d 699, 214 N.W.2d 42 (1974) (bank's ignorance of coverage inexcusable). While Wisconsin courts may well afford an individual insured more leeway than a banking corporation, four years following the onset of a permanent disability simply asks too much. Here, Bogusewski signed an enrollment card in 1988 that clearly identified the policy now at issue. (Def.'s Br., Ex. 1.) He suffered a permanent disability in 1991—an event that would alert a reasonable insured to review his insurance coverage. Finally, Bogusewski was involved in several litigations involving his disability and employment since some time shortly after October 1991. It is unreasonable that these factors did not lead to the discovery of coverage prior to December 1995. Bogusewski failed to comply with the proof of notice clause contained in the LINA policy. Nonetheless, all may not be lost.

### B. Section 631.81(1) of the Wisconsin Statutes

■ Wisconsin law prevents insurance companies from using proof-of-loss clauses to

---

1. The court rejects the defendant's assertion that Bogusewski should be treated as more sophisticated than the average consumer merely because he had been a claims adjuster with an insurance company, absent more particularized evidence of any relevant expertise.

enjoy windfalls in denying paid-for benefits. Unless an insurer's interests were actually compromised by a delay, coverage adheres. Section 631.81(1) provides:

> Provided notice or proof of loss is furnished as soon as reasonably possible and within one year after the time it was required by the policy, failure to furnish such notice or proof within the time required by the policy does not invalidate or reduce a claim unless the insurer is prejudiced thereby and it was reasonably possible to meet the time limit.

Thus, if an insurance policy's proof-of-loss period ends, the insured may nonetheless obtain coverage by filing within a year if the insurer cannot prove that it was prejudiced by the delay. Based on the discussion above, it is apparent that Bogusewski failed to comply with this statute insofar as he submitted proof of his loss several years after the policy's proof-of-loss clause expired as to this claim. On its face the statute does not address the situation at hand: the fate of an insured who files more than one year after the expiration of the proof-of-loss period contained in the policy.

The Supreme Court of Wisconsin, however, has construed this statute to cover the instant situation. In *Gerrard Realty Corp. v. American States Ins. Co.*, 89 Wis.2d 130, 277 N.W.2d 863 (1979), the court held that proofs submitted after the one-year period create a rebuttable presumption of prejudice to the insurer within the meaning of § 631.81(1). Thus, under *Gerrard Realty,* Bogusewski has the opportunity to prove that LINA suffered no prejudice as a result of the delay in filing proof of loss.

## C. *ERISA Preemption*

■ LINA asserts that ERISA preempts the effect of § 631.81(1). Much has been written about ERISA's unusual preemption scheme. The basic contours shall suffice for the instant purpose: 29 U.S.C. § 1144(a) preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan" covered by ERISA. What Congress takes, however, it can return. Section 1144(b)(1), the savings clause, "unpreempts" any law "which regulates insur-

ance, banking, or securities." Therefore, for our purposes, LINA argues that § 631.81(1), relates to the employee benefit plan but does not regulate insurance.

The only authority offered for this proposition is dicta contained in a footnote in *Rockline, Inc. v. Physicians Serv. Ins.*, 175 Wis.2d 583, 596–97 n. 10, 499 N.W.2d 292, 298 n. 10 (Ct.App.1993) ("[T]he Employee Retirement Income Security Act ... likely preempts sec. 631.81, Stats., to the extent that sec. 631.81 relates to the plan and/or administration of the plan"). This single line is uninstructive in the case at bar. Rather than dwell on this footnote, the court must decide as a matter of first impression in the Seventh Circuit whether ERISA preempts the operation of § 631.81 between an insured and insurer. The court finds that § 631.81(1) "regulates insurance" and is therefore shielded from ERISA's otherwise expansive preemptive effects by ERISA's savings provision, 29 U.S.C. § 1144(b)(2)(a).

In *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court reviewed a statute which established mandatory minimum health care benefits. In holding that the statute "regulate[d] insurance" within the meaning of § 1144(b)(2)(a), the court established a common-sense appraisal of whether the statute is an insurance regulation. In navigating ERISA's complex and unusual preemption/savings scheme, a court is required to maintain its bearings by apprehending words with their ordinary meanings.

Section 631.81(1) appears in a statutory chapter entitled "Insurance Contracts Generally," and a subchapter entitled "Specific Clauses in Contracts." It establishes, by law, part of the mechanism by which an insured lays claim to benefits under an insurance policy. Section 631.81(1) operates like the mandated minimum health care coverage at issue in *Metropolitan Life* by constructively incorporating in an insurance policy modifications to existing provisions. The *Metropolitan Life* court found that a statute that "regulates the terms of certain insurance contracts" should be viewed as a statute "regulat[ing] insurance." *Id.* at 740, 105

S.Ct. at 2389; *see also Plumb v. Fluid Pump Serv.*, 124 F.3d 849, 859 (7th Cir.1997) (engaging in *Metropolitan Life* analysis of a state law regulating preexisting conditions limitations in health insurance plans covering small employers).

The *Metropolitan Life* court bolstered this view by applying factors derived from cases interpreting the McCarran–Ferguson Act's phraseology the "business of insurance." Specifically, the court found that mandated benefits legislation had the effect of transferring or spreading a policyholder's risk, was an integral part of the insurer-insured relation, and was limited to the insurance industry. *Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. at 2390. While application of the risk-spreading factor to § 631.81(1) is awkward in this case, application of the second and third factors confirm the common-sense conclusion that the statute "regulates insurance." In modifying by law the proof-of-loss clause, the statute insinuates itself directly into the insurer-insured relation. Further, by its terms the statute is focused exclusively on insurance contracts.

The difficulty in applying the risk-spreading factor gives no pause for several reasons. First, the *Metropolitan Life* methodology is fully cognizant of the complexity of the ERISA preemption scheme and seeks to avoid confusion by maintaining a focus on common-sense notions of insurance regulation. *See id.* at 740, 105 S.Ct. at 2389. This is the linchpin of ERISA's insurance savings clause analysis. After deeming the Massachusetts mandated-benefits statute an insurance regulation, the Court looked to McCarran–Ferguson Act case law, and factors derived therefrom, for additional support. Nothing in the opinion or its progeny suggests that this secondary analysis should be applied rigidly or that a failure to conform with a single factor, in itself, undoes the "common-sense" determination that a statute "regulates insurance." Further, employing the *Metropolitan Life* analysis, we look to the purposes of ERISA. In 29 U.S.C. § 1001, Congress expresses ERISA's purpose of protecting employees and their beneficiaries, as well as the interstate flow of commerce. Holding that ERISA preempts § 631.81(1) would create a gap in the meaning of the insurance contracts between ERISA-covered insurance and privately, individually purchased insurance that would undermine, rather than further, these purposes.

Such conclusion derives support from a court of appeals decision from the Ninth Circuit that is closely on point. In *Cisneros v. UNUM Life Ins. Co.*, 115 F.3d 669 (9th Cir.1997), an employee sought to collect long-term disability benefits under a group policy two years after the onset of the disability. The defendant insurer rejected the claim as violative of the policy's proof-of-loss provision. California law, like Wisconsin's § 631.81(1), disallows an insurer to reject a claim as untimely unless the delay has prejudiced the insurer. The *Cisneros* court engaged in an analysis similar to that set out above and found the "notice-prejudice" rule well within ERISA's savings clause. The court proceeded to adopt the rule as an aspect of ERISA federal common law. While this particular question is not at issue in the case at bar, it emphasizes that state law notice-prejudice statutes, in force in at least half of the states, serve rather than conflict with ERISA's purposes. *Id.* at 674.

Finally, the defendant's unexplained citation to *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), adds nothing to this discussion. That case applied *Metropolitan Life* to find that state-law remedies, specifically bad faith causes of action, are preempted by ERISA. The case at bar, in contrast, is one seeking a typical ERISA remedy—specifically, those benefits due Bogusewski under the LINA policy. *See* 29 U.S.C. § 1132(a)(1)(B). *Pilot Life*, therefore, has no application here. Section 631.81(1) of the Wisconsin Statutes is not preempted by ERISA, and Bogusewski's proof of loss may be deemed timely if Bogusewski can demonstrate that LINA was not prejudiced by the delay. LINA's motion for summary judgment is denied.

**D.  *Summary Judgment for Bogusewski***

■ LINA concedes that Bogusewski became disabled in October of 1991. In addition, paragraph 13 of Plaintiff's May 30, 1997 Proposed Findings of Fact states:

Life Insurance Company of North America has not been prejudiced by the delay in

Mr. Bogusewski submitting the application and they were able to investigate the claim and have stipulated to the facts granting liability under the policy for benefits, those being that Mr. Bogusewski became disabled on October 22, 1991.

LINA does not dispute this assertion. Therefore, the court finds that no relevant factual dispute remains with regard to the single legal issue at bar: whether LINA was prejudiced by the delay. *See* Local Rule 6.05(d) (E.D.Wis.) Under the law as discussed above, Bogusewski is entitled to summary judgment, despite not having requested it.

A court may grant summary judgment *sua sponte* where no factual disputes remain. *Goldstein v. Fidelity and Guar. Ins. Underwriters, Inc.*, 86 F.3d 749 (7th Cir.1996). While the *Goldstein* court cautioned that sua sponte summary judgment should not be used when it would amount to unfair surprise to the losing party, the court found that if a party moves for summary judgment and the court accepts the facts as asserted by that party, it is not unfair to accord judgment for the nonmovant on questions of law.

In this case, the virtue of *sua sponte* summary judgment is even more clear-cut. In response to LINA's motion for summary judgment, Bogusewski asserted two theories of timeliness. The first, based on the insurance policy's language, failed. The second, however, based on Wis. Stat. § 631.81, succeeded. The crux of this second theory was the lack of prejudice to LINA. In other words, the lack of prejudice to LINA was not a far-flung fact which would not have appeared to be vital to this litigation; it was a central basis of Bogusewski's claim. As a result, it is appropriate for the court, having accepted Bogusewski's legal analysis and applied it to undisputed facts, to grant Bogusewski summary judgment.

## CONCLUSION

The defendant, Life Insurance Company of North America's motion for summary judgment is **DENIED.**

Judgment shall be entered for plaintiff John J. Bogusewski following resolution of any damages issues.

The plaintiff John J. Bogusewski shall serve on the defendant and file with the court a statement of damages within 14 days of this order. The defendant Life Insurance Company of North America shall respond within ten days following its receipt of the plaintiff's statement.