Brɪᴛᴢ, Plaintiff and Respondent, vs. Aᴍᴇʀɪᴄᴀɴ Iɴsᴜʀᴀɴᴄᴇ Coᴍᴘᴀɴʏ, Defendant and Appellant: Yᴇʟʟow Maɴᴜ-ꜰᴀᴄᴛᴜʀɪɴɢ Aᴄᴄᴇᴘᴛᴀɴᴄᴇ Coʀᴘoʀᴀᴛɪoɴ, Intervening Defendant and Respondent.*

*October 11—November 5, 1957.*

* Motion for rehearing denied, with $25 costs, on January 7, 1958.

For the appellant there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Arthur J. Kaftan.*

For the respondent there was a brief and oral argument by *Ken Traeger* of Gresham.

For the intervening respondent the cause was submitted on the brief of *Adolph I. Mandelker,* attorney, and *John H. Wessel* of counsel, both of Milwaukee.

BROWN, J. The insurer's first defense is that the truck was never stolen. This issue was submitted in a special verdict to the jury which answered that it was stolen on April 13, 1953. The defense rests on inferences that Britz would not have acted as the insurer claims he did if the truck had really been stolen. Britz testified unequivocally that the truck was stolen and he denies acting as the insurer alleges he did. This was clearly a jury question and the jury's finding that the theft occurred is amply supported by Britz's testimony.

The next defense is that Britz did not comply with the terms of the policy which provide:

"When loss occurs, the insured shall: . . .
"(b) give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft, larceny, robbery, or pilferage, to the police but shall not, except at his own cost, offer to pay any reward for recovery of the automobile;"

Britz testified that about 7:30 a. m. on the morning of April 13th he discovered his truck was gone from the place where he had parked it, and that within minutes of the time he discovered its absence a squad car containing three police

officers drove by. He halted the car and informed the officers of the event. They made a note of it and told him that the truck would be recovered if it was still in Chicago. The police have no record of such a report. Britz's testimony, though uncorroborated, supports the answer in the special verdict that Britz notified the police as soon as practicable.

Britz testified that as soon as the Yellow office was open that morning in Chicago he called the office and reported the theft, first to a woman clerk who shifted him to a man clerk to whom he repeated the report. The Insurance Company submits, first, that such a report by Britz was never made, and, second, that if it *was* made to Yellow that does not comply with the requirement that the notice must be given to the Insurance Company or to any of its authorized agents.

The jury found that Britz did give notice of the theft as soon as practicable to the insurer or to an authorized agent. Britz's testimony which, though unsubstantiated, might be believed by the jury would support an answer that the notice was given to Yellow as soon as practicable. The question remains whether Yellow is an authorized agent of defendant company to whom a report may be made to satisfy provision (b) of the policy, *supra.*

At the time of the transactions in question, sec. 209.05, Stats., was in effect, though since repealed, reading as follows:

"WHO ARE AGENTS. Every person or member of a firm or corporation who solicits insurance on behalf of any insurance company or person desiring insurance of any kind, or transmits an application for a policy of insurance, other than for himself, to or from any such company, or who makes any contract for insurance, or collects any premium for insurance, or in any manner aids or assists in doing either, or in transacting any business of like nature for any insurance company, or advertises to do any such thing, shall be held to be an agent of such company to all intents and purposes,

unless it can be shown that he receives no compensation for such services. . . ."

The trial court considered as a matter of law that Yellow was an agent of defendant Insurance Company, authorized to receive notice of loss in behalf of the company. It instructed the jury: ". . . so far as the policy of insurance is concerned, and notice to the company is required, that notice, if notice was given to the Yellow Manufacturing Acceptance Corporation, would be notice to an agent of the company."

The trial court's reasons for that belief can be found in its decision upon motions after verdict. On this subject the court said:

"During the course of the trial the defendant offered no proof to disclaim any agency between it and the Yellow Manufacturing Acceptance Corporation, nor did it attempt in any way to show the relationship, or lack of it, between it and that company. The policy bore the name of Yellow Manufacturing Acceptance Corporation in bold printed type; and the court feels that an issue of fact was raised as to whether or not the Yellow Manufacturing Acceptance Corporation was in fact an agent of the Insurance Company. There was enough credible evidence, and inferences therefrom, to warrant the conclusion that such agency existed, and it was up to the defendant to disclaim it by proper proof.

"The plaintiff was a resident of Wisconsin; at the time of the application for insurance his truck was in this state; the initiation of the insurance transactions originated within this state; and it seems to the court that section 209.05 of the statutes would be applicable."

We think the statement is erroneous in several respects. First, the proof of agency as well as the proof of notice is plaintiff's burden. Defendant is not required to disclaim. Second, if the trial court is right in saying that an issue of fact was raised and the evidence warranted inferences that an agency existed, a jury question was thereby presented; yet the court did not include such a question in the special

verdict but settled that issue in its instruction quoted above, as a matter of law. At the very best, this would require a new trial.

We do not order a new trial, however, because we disagree radically with the learned trial court on the effect of the evidence and the permissible inferences. The court placed some reliance on the fact that the policy bore Yellow's name in bold printed type. It does, but not in any connection from which agency can be inferred. This is the only recitation: "Loss if any, payable, as interest may appear, to Name of Purchaser ——————— and/or Yellow Manufacturing Acceptance Corp." The fact that Yellow's name is printed as one of the parties insured permits the inference that Yellow was procuring insurance from defendant American Insurance Company in sufficient volume to make it convenient to have its name as an assured printed in the policy, but does not in the least support an inference that, though it is only named as an assured in reality it is the Insurance Company's agent. The conclusion is reinforced by the fact that the policy does name an agent. It was executed and issued by "Detroit Insurance Agency, Agent." We find nothing in the facts mentioned by the trial court or elsewhere sufficient to raise even for a jury a question of Yellow's agency for the Insurance Company.

Sec. 209.05, Stats., referred to by the trial court does not, we think, aid plaintiff's argument. We do not regard as important the court's statement that plaintiff was a resident of Wisconsin, when in fact he resided in Michigan. What is vital is the total lack of evidence that Britz, or anyone acting for Britz, dealt in Wisconsin with the insurer or an insurer's agent. Mueller's contact was with Yellow and we have already said that the record presents nothing which will support a finding that in fact there was the relationship of principal and agent between American Insurance Company and Yellow. All Yellow's activity in forwarding to the Insurance

Company the application for insurance, the premium, etc., might, under the statute, create the status of agency if Yellow had so acted in the state of Wisconsin. But all Yellow's acts were performed in Illinois and at the times in question Illinois had no statute like our sec. 209.05. For lack of it Yellow's acts in Illinois did not constitute it the Insurance Company's agent. The Wisconsin statute could not reach beyond our boundaries to impose our concepts on parties and activities in Illinois.

There is no proof that Yellow was an agent in fact and it has not been converted into one by statute. Therefore, notice of theft given by Britz to Yellow was notice only to Yellow as the assignee of Mueller and was not notice to the Insurance Company.

We must then determine what is the effect of a failure by the assured, or an assured, to give the insurer timely notice of the loss.

The policy in question contains the following provisions:

"1. *Insured's Duties when Loss Occurs.* When loss occurs, the insured shall: . . .

"(b) give notice thereof as soon as practicable to the company or any of its authorized agents and also, in the event of theft, larceny, robbery, or pilferage, to the police but shall not, except at his own cost, offer to pay any reward for recovery of the automobile; . . .

"5. *Payment for Loss; Action against Company.* Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

Where notice is a condition of the policy we long held that timely notice to the insurer by the insured or someone in his behalf is a condition precedent to the maintenance of his action on the policy. Thus, in *Foster v. Fidelity & Casualty Co.* (1898), 99 Wis. 447, 75 N. W. 69, we held that performance of a policy provision which required im-

mediate written notice of an accident was a condition precedent to recovery on the policy. In *Underwood Veneer Co. v. London G. & A. Co.* (1898), 100 Wis. 378, 75 N. W. 996, a policy insuring against liability for accidents contained a provision that " 'upon the occurrence of an accident, *and also* upon receipt of notice of any claim on account of an accident, the assured shall give immediate notice . . . etc.' " An accident occurred August 24, 1895. The policyholder did not notify the company until May 23, 1896. This court held (p. 381):

"After careful consideration, we are constrained to hold that the conditions indorsed upon the policy, and quoted above, were conditions precedent. The policy expressly states that it was 'subject to the agreements and conditions indorsed' thereon. Such conditions expressly required the plaintiff, 'upon the occurrence of an accident,' to 'give immediate notice in writing of such accident,' etc. The reason for requiring such notice is obvious. It was to enable the defendant to investigate the facts and circumstances of the accident while they were fresh in mind, with the view of settling the loss in case it should be so advised, and, in case of a contest, to be prepared to defend the same as stipulated in the policy."

Although we noted the absence of a forfeiture clause in the contract we ordered the complaint to be dismissed, saying (p. 382): "Nevertheless the plaintiff, in order to maintain this action, was bound to perform such condition precedent."

Upon rehearing, the plaintiff urged that a forfeiture should not be enforced except upon the clearest evidence that such is the meaning of the contract, and cited *Vangindertaelen v. Phenix Ins. Co.* (1892), 82 Wis. 112, 51 N. W. 1122, on which present plaintiff also relies. Nevertheless we adhered to our decision.

In *Bachhuber v. Boosalis* (1930), 200 Wis. 574, 229 N. W. 117, plaintiff was insured against liability arising out

of automobile accidents. The policy provided that no liability was incurred by the insurer unless the insured gave immediate notice of the accident resulting in damage and immediate notice of claim under the policy and co-operated in the defense of any action brought against him. Citing *Underwood Veneer Co. v. London G. & A. Co., supra,* we held (p. 575):

"The provisions in the policy as to notice of accident, claim for damages, and co-operation in defense are conditions precedent, failure to perform which, in the absence of waiver or estoppel, constitute defenses to liability on the policy."

At the first session of the legislature after the *Bachhuber* decision, the 1931 session, sec. 204.34, Stats., was enacted (enacted as sec. 204.33 by ch. 477, and renumbered sec. 204.34 and re-enacted by ch. 487, Laws of 1933). The statute is expressly limited to policies insuring against liability arising from the ownership, maintenance, or use of a motor vehicle. Sub. (3) thereof provides:

"No policy of insurance, agreement of indemnity, or bond as provided in subsection (1) shall limit the time for the giving of notice of any accident or casualty covered thereby to a period less than that provided in subsection (1) of section 204.29. Failure to give such notice shall not bar liability under such policy of insurance, agreement of indemnity, or bond as provided in subsection (1) if the insurer was not prejudiced or damaged by such failure, but the burden of proof to so show shall be upon the person claiming such liability."

This enactment suggests two important considerations: 1, That the legislature wished to change the law as it was stated in the *Bachhuber Case, supra,* respecting the result of a failure to give notice of loss or injury but that it desired, and so limited, the change to affect only auto accident insurance; and 2, that even in such cases the law re-

mains as stated in the *Bachhuber Case* unless the claimant proves that the insurer was not damaged by the insured's failure to give timely notice.

Our conclusion, then, must be that when an automobile accident or casualty is not involved the law respecting the effect of a failure to give timely notice of loss, where such notice is required by the policy, remains as it was when stated in *Foster v. Fidelity & Casualty Co., supra, Underwood Veneer Co. v. London G. & A. Co., supra,* and *Bachhuber v. Boosalis, supra.*

The rule regarding the effect of failure to furnish *proof of loss* is different. There is no great hurry there, such as there is when loss occurs and the insurer must be notified so that it may proceed, while the evidence is fresh and available, to investigate and, if possible, to reduce or prevent loss. Historically, failure by the assured to furnish proof of loss within a stipulated time has only postponed maturity of the claim until the proof was furnished. It was so held in *Vangindertaelen v. Phenix Ins. Co., supra, Flatley v. Phenix Ins. Co.* (1897), 95 Wis. 618, 70 N. W. 828, and *Klingler v. Milwaukee Mechanics Ins. Co.* (1927), 193 Wis. 72, 213 N. W. 669. It was these cases dealing with proof-of-loss derelictions which were cited as authority in a notice-of-loss case, *Ciokewicz v. Lynn Mut. Fire Ins. Co.* (1933), 212 Wis. 44, 49, 248 N. W. 778, when we held:

"The policy contained no provision for forfeiture for failure to give notice as required by the terms of the policy or the by-laws. If a policy requires notice to be given but contains no provision to the effect that failure to give notice within the time limited works a forfeiture of the policy, failure to give notice as stipulated does not work a forfeiture but merely postpones the maturity of the claim under the policy."

Tardy *proof of loss* is different in its effect from failure to give *notice of loss* and we think now that the precedents

of the notice-of-loss cases might better have been followed in the *Ciokewicz Case, supra,* than the precedents of the proof-of-loss cases. Shepard shows no Wisconsin citations of *Ciokewicz.* We do not now overrule it but we will not extend its authority beyond the facts with which it dealt. The policy in that case provided merely that the assured should immediately give notice of loss. That was all; no consequences of a failure to do so were mentioned. In the instant case the policy provides:

"5. *Payment for Loss; Action against Company.* Payment for loss may not be required nor shall action lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy nor until thirty days after proof of loss is filed and the amount of loss is determined as provided in this policy."

The consequences of failure are clearly called to the assured's attention, as they were not in *Ciokewicz, supra,* and enables us to distinguish that case rather than compelling us to overrule it. But we limit its authority to its own facts.

When the facts are as they are in the case at bar we adhere to the doctrine that, unless the insurer has waived timely notice of loss or is estopped from asserting that such notice was not given, the giving of such notice by the assured or someone in his behalf is a condition precedent to the maintenance by the assured of an action to enforce the payment provisions of the policy.

This brings us to the facts respecting the giving of notice of the theft.

Britz testified that he never did notify the Insurance Company and did not know how or when it learned of the theft. The company did learn of it, however, for on July 21, 1953, an investigator for the company came to Britz's home to inquire about it. This investigator testified that he received company directions to investigate on July 15th.

For present purposes we assume, though we do not decide, that if someone other than the assured notified the insurer within the "as soon as practicable" time limit applicable to the assured, the purpose of the requirement of prompt notice would be served and the obligation to notify would be satisfied.

But the proof that the conditions precedent to maintaining an action have been met is the assured's burden. If, as here, he must rely on notice given the company by somebody else, he must still prove that the notice was timely, exactly as he would have to prove it if the notice was given by himself.

Britz found it practicable to notify his finance company, Yellow, on April 13, 1953, the day when his truck was stolen. It must be presumed that it was practicable for him to notify the Insurance Company just as readily. He has proved only that the insurer already knew of the theft on July 15, 1953. There is no evidence that the company received notice of the theft from anyone within the time when it was practicable for Britz to have reported it.

We must hold that the condition precedent required by the insurance policy was not met and that the action on the policy does not lie.

Defendant insurer submits that Britz violated the terms of the policy by representing in his application for insurance that the tractor would be driven only within a radius of 150 miles of Menominee, whereas he habitually exceeded that limit. The jury found that Britz did not warrant this restriction of his operation. We do not discuss this issue of the appeal because the judgment must be reversed in any event for lack of a timely notice of loss given to defendant insurer.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.