PORTER (Hugh), Executor of the Estate of Willard Porter, Respondent, v. GENERAL CASUALTY COMPANY OF WISCONSIN, Appellant.

*No. 250. Argued May 6, 1969.—Decided June 3, 1969.*
(Also reported in 168 N. W. 2d 101.)

For the appellant there were briefs by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Clayton R. Hahn* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn.*

For the respondent there was a brief by *Pfannerstill, Camp & Tyson* of Wauwatosa, and oral argument by *Mark M. Camp.*

CONNOR T. HANSEN, J. In August, 1957, appellant issued its "Comprehensive Farm Liability" policy to Willard Porter which provided general liability coverage to premises owned and operated by Porter as a farm.

The insurance policy provided in its pertinent parts as follows:

"INSURING AGREEMENTS

"I COVERAGE A—LIABILITY

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, including exchange laborer, and as damages because of injury to or destruction of property, including the loss of use thereof.

". . . .

"II DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS

"As respects the insurance afforded by the other terms of this policy under coverage A the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . .

". . . .

"CONDITIONS

". . . .

"4. NOTICE OF OCCURRENCE—Coverages A and B
"When an occurrence takes place *written notice* shall be given by or on behalf of the insured to the company or any of its authorized agents *as soon as practicable.* Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses." (Emphasis added.)

On November 21, 1959, Reuben Brown, an employee of a Mr. Peardon, an independent contractor who had contracted to reroof a barn on Willard Porter's property, fell from a ladder which apparently slipped while leaning against the barn. Brown was injured and conveyed by ambulance to a hospital.

On June 26, 1961, Brown commenced an action against Porter by service of summons and complaint. On July 5, 1961, about nineteen months after the accident, Porter tendered the defense of the action to General Casualty. This was General Casualty's first knowledge of the accident. General Casualty wrote Porter advising him that it would undertake the defense, but reserved all rights under the policy.

On November 1, 1961, General Casualty advised Willard Porter that it was withdrawing from his defense.

Porter then retained his own defense counsel in the Brown action. On November 13, 1964, a jury absolved Porter of any negligence in causing the injuries and damages sustained by Reuben Brown.

Thereafter, on December 1, 1964, Willard Porter instituted this action against General Casualty to recover the attorney fees incurred.

General Casualty asserts as its defense that Willard Porter did not comply with the conditions of the policy requiring written notice "as soon as practicable" "when an occurrence takes place" as no notice was received until nineteen months after the occurrence.

At the close of the testimony, General Casualty moved for a nonsuit and a directed verdict. Both motions were denied and the court submitted the following question to the jury:

"Did Willard Porter give written notice to the General Casualty Company as soon as practicable after the occurrence of the event in question?"

General Casualty contends that its motions for nonsuit and for directed verdict should have been granted. General Casualty asks this court to hold as a matter of law that no timely notice was received.

What is "as soon as practicable" is a question of fact which depends on the circumstances of the particular case. In *Allen v. Ross* (1968), 38 Wis. 2d 209, 216, 156

N. W. 2d 434, this court stated: "We think that normally mere lapse of time cannot constitute a breach. What is 'as soon as practicable' is by nature a factual matter but, of course, the insufficiency of the proof may be a question of law."

A preliminary question is whether the insured had reasonable grounds to believe he was a participant in an accident.

In *Vande Leest v. Basten* (1942), 241 Wis. 509, 6 N. W. 2d 667, an action was brought by a motorcycle driver who alleged that the defendant caused him to lose control of his motorcycle and run into a telephone pole when the defendant turned left across his lane of travel. The defendant contended that he was in no way involved in causing the accident. It was conceded that there was no contact between the motorcycle and the automobile. Defendant's insurance company denied coverage because it did not receive written notice of the accident for seventeen months, while the policy required written notice "as soon as practicable."

This court said that the requirement in the policy that notice be given to the insurer as soon as practicable "must receive a reasonable construction:"

"It is not the duty of the insured to make a report unless he has reasonable grounds to believe that he is a participant in an accident. . . . If in this case the insured in no way interfered with, or affected, the line of travel of the plaintiff, and if, as appears to be conceded, there was no contact between the vehicles and what simply happened was that plaintiff by reason of his high speed and negligent conduct lost control of his motorcycle, it would be open to a jury to conclude that insured had no reasonable grounds for supposing that he was a participant in the accident. This issue is made more substantial by affidavits to the effect that the police advised him that he was not a participant; that he knew of plaintiff's plea of guilty to a charge of negligent driving and that he had had no claims made against him until the service of the summons and complaint, nearly two years after the accident." *Vande Leest, supra,* page 513.

*Vande Leest* did not reach the question of whether the insured had a duty to report the accident if he had any reasonable ground to believe that a claim would be made against him by the injured motorcycle driver. The case did not rest on the insured's evaluation of whether he was liable for the injury, but merely whether he had reasonable grounds to believe he was a participant in the accident.

The pertinent part of the instruction given in the instant case was modeled after *Vande Leest* and was as follows:

"The insurance policy requires that when an occurrence takes place, written notice shall be given by the insured to the company as soon as practicable. The requirement in the policy that notice be given as soon as practicable must receive a reasonable construction. It is not the duty of the insured to make a report unless he has reasonable grounds to believe that he is a participant in the accident. *If the insured could under the circumstances reasonably conclude that he was in no way involved, then there would be no obligation to report. If the insured in no way interfered with or affected the work of Reuben Brown that gave rise to the accident, then the insured may have reasonable grounds for supposing that he was not a participant in the accident and he would not be obligated to report it.*

"It is not the honest, or even reasonable, belief of the insured which is the test of his duty to report; it is the existence of the known fact of an accident involving himself or his property." (Emphasis added.)

Without giving any reasons, General Casualty objected to that part of the instruction which is above emphasized and concludes that the language in *Vande Leest* was inappropriate because, General Casualty contends, Porter knew that he was a participant in the accident.

We are of the opinion that the instruction was sufficiently patterned after *Vande Leest,* and as in *Vande*

*Leest* a significant factual question arose as to whether Porter had reasonable grounds to believe that he was not a participant in the accident. In light of *Allen* and *Vande Leest* the court properly put the question to the jury, unless Porter's proof was so insufficient as to make it a question of law.

The evidence most favorable to Porter was as follows:

1. Before work was commenced on the barn, the independent contractor (Peardon), Brown, and Porter's son moved farm wagons into position to form an enclosure to protect the ladders from wandering livestock.

2. In negotiating the contract for reroofing, Porter wanted to be sure Peardon had insurance because Porter had a previous experience where someone fell from the barn and subsequently died. Peardon assured Porter that he had workmen's compensation insurance.

3. Porter took notes on the afternoon of the accident which indicate that the cement barnyard upon which the ladders stood was "icy" and conducive to slipperiness of the ladder.

4. Porter had nothing to do with regard to the placement of the ladder, nor with the activities involved in the roofing operation. Porter was a half mile away picking corn at the time of the accident.

5. Porter consulted an attorney the day of the accident or the following day who advised Porter that he was not responsible as long as the contractor had workmen's compensation insurance.

6. Brown's action against Porter commenced by service of a summons and complaint on June 26, 1961, nineteen months after the accident.

7. The jury in the Brown action totally absolved Porter of all negligence, thereby confirming the opinion of Porter and Porter's counsel that Porter had no responsibility for the accident.

The evidence against Porter which demonstrates that he should have anticipated a lawsuit and that he was involved in a reportable accident is thus:

1. Porter knew of the accident and arrived at the scene within twenty minutes.

2. Immediately upon returning to the scene of the accident Porter undertook an investigation and made notes concerning the accident in case a claim was made against him.

3. His own ladder was involved in the accident.

4. About two weeks after the accident Porter heard that Brown claimed a hog bumped into the ladder. The evening of the accident Porter's son informed him that the hogs had not been locked up on the day of the accident.

5. Porter was aware of the contents of the insurance policy and knew that when an accident occurred that was covered by the policy he was supposed to report it to the insurance company.

6. Porter knew that an attorney for Brown visited his farm once or twice in 1959. Porter was also concerned about a statement his son gave the attorney because it might be used against him. *Contra:* The attorney indicated that his investigation dealt with a workmen's compensation claim.

7. Porter contacted an attorney because he was concerned about a potential claim. Porter did not bring the insurance policy with him and no discussion was made of the necessity of reporting the accident to General Casualty.

8. Porter did not give notice of the accident until nineteen months after the accident.

9. Porter had two accident claims in the past which he reported to insurance companies.

"A case should be taken from the jury and a verdict directed against a party:

" ' " . . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' "

*Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 698, 151 N. W. 2d 741.

"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed." *Zillmer, supra,* page 699.

Viewing the evidence most favorable to Porter, we conclude that General Casualty's motions for directed verdict and nonsuit were properly denied.

While Porter knew that his property was involved in the accident, he could reasonably conclude from his own investigation of the accident that he was not a participant. He in no way interfered with or affected the work of Brown, and Porter could reasonably conclude that the accident only involved a workmen's compensation claim.

In *Vande Leest,* the defendant rendered assistance to the plaintiff after the accident and conferred with police. This court took particular note that the police advised him that he was not a participant. Similarly, in the instant case, Porter was advised by an attorney that he was not responsible. While such advice probably should not excuse a failure to report, it does provide an explanation for Porter's conduct.

General Casualty cites several cases where lengthy delays in giving notice to the insurer were held as a matter of law to relieve the insurer of liability. The policy reasons for requiring such notice are indicated in *Underwood Veneer Co. v. London Guarantee & Accident Co.* (1898), 100 Wis. 378, 381, 75 N. W. 996:

"It was to enable the defendant to investigate the facts and circumstances of the accident while they were fresh in mind, with the view of settling the loss in case it should be so advised, and, in case of a contest, to be prepared to defend the same as stipulated in the policy."

All the cases cited by General Casualty are summarized in *Britz v. American Ins. Co.* (1957), 2 Wis. 2d 192, 86

N. W. 2d 18. However, the *Vande Leest Case* was not mentioned and none of the cases in *Britz* involved the question of whether the insured had reasonable grounds to believe that he was not a participant in or involved in the occurrence which gave rise to the insurance claim.

General Casualty also cites *Calhoun v. Western Casualty & Surety Co.* (1951), 260 Wis. 34, 49 N. W. 2d 911, where an eleven-month delay in giving notice was deemed not given as soon as practicable as a matter of law. However, *Calhoun* involved an automobile collision and again there was no question of participation in the accident.

In our opinion it cannot be said as a matter of law that Porter had reasonable grounds to believe that he was a participant in the accident. The question was properly put to the jury and the trial judge correctly entered judgment upon the verdict.

" '. . . we must judge the jury verdict in the light of the familiar rules that (1) a jury verdict will not be upset if there is any credible evidence which under any reasonable view fairly admits of an inference supporting the findings, (2) this is particularly true when the verdict has the blessing of the trial court, and (3) the evidence is to be viewed in the light most favorable to the verdict.' " *Cornwell v. Rohrer* (1968), 38 Wis. 2d 252, 257, 156 N. W. 2d 373.

The respondent asserts an alternative ground for affirmance in the event this court determines that the notice was untimely as a matter of law. We have not done so and, therefore, it is not necessary to consider the alternative ground for affirmance.

*By the Court.*—Judgment affirmed.