RTE CORPORATION, Appellant, v. MARYLAND CASUALTY COMPANY, Respondent.

*No. 75–86. Submitted on briefs September 14, 1976.—
Decided November 30, 1976.*
(Also reported in 247 N. W. 2d 171.)

For the appellant the cause was submitted on the brief of *Erwin Esser Nemmers* of Chicago, Illinois.

For the respondent the cause was submitted on the brief of *Kenneth M. Kenney* and *Wolfe, O'Leary, Kenney & Wolfe,* of Milwaukee.

ABRAHAMSON, J. The principal issue in this case is whether the insured's failure to give any notice of loss to the insurer for more than nine months after the insured's property was damaged released the insurer from liability as a matter of law.

## FACTS

Maryland Casualty Company issued to RTE Corporation an indemnity policy of property damage insurance

which for purposes of this appeal both parties agree may be considered to be a cargo insurance policy. The policy contained the following provisions of interest on this appeal:

"...

"14. OTHER INSURANCE: Except as to specific insurance as defined in Section 13 of this policy, this policy shall not cover to the extent of any other insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess value beyond the amount due from such other insurance.

"The Company agrees to advance to the Assured as a loan the amount which would have been collectible under this policy except for the provisions of this Section, such loan to be repayable only to the extent of and at the time of the Assured's collection from such other insurance.

"15. NOTICE OF LOSS: If any loss occurs under this policy, the Assured shall report the same promptly upon becoming known, to this Company.

"16. PROOF OF LOSS: It shall be necessary for the Assured to render a statement signed and sworn to stating the place, time and cause of the loss or damage, the interest of the Assured and of all others in the property, the value thereof and the amount of loss or damage thereon. In case of failure to file written Proofs of Loss within Ninety (90) Days after the loss becomes known to the insurance manager or a corporate official of the Assured, unless such time is extended in writing by the Company, the claim shall be invalidated. Upon the Company's request the Assured shall exhibit the damaged property to the Company and submit to examination under oath by anyone designated by the Company, subscribe the same and produce for the Company's examination all pertinent records and sale invoices, certified copies if originals be lost, permitting copies thereof to be made, all at such reasonable times and places as the Company shall designate.

"...

"26. SUIT AGAINST THE COMPANY: No suit or action on this policy for the recovery of any claim shall

be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this policy, nor unless commenced within twelve (12) months next after the happening of the loss, unless a longer period of time is provided by applicable statute."

On August 22, 1969, RTE shipped five large transformers by common carrier truck. The truck upset on August 24, 1969, and the transformers were damaged. Maryland Casualty's policy was in full force and effect on the date the accident occurred, and there is no dispute that the transformers were insured property or that the damage thereto resulted from an insured peril. RTE was advised of the accident within a short time after it occurred and made claim for the damage against the carrier. Within thirty days after the occurrence RTE was advised by agents of the carrier that the carrier was self-insured up to $10,000, that it had insurance coverage over that sum, and that RTE would be compensated for its loss.

On June 3, 1970, over nine months after the occurrence, RTE sent a letter to Maryland Casualty's agent advising it of the upset (but not supplying any details) and advising it that a claim was being made against the carrier. It is undisputed that this letter was the first notice of any kind received by Maryland Casualty regarding the damage to the transformers. Maryland Casualty made no response to the June 3, 1970 letter.

On April 6, 1971, RTE again wrote Maryland Casualty's agent, this time advising it of the amount of loss, that the claim against the carrier's insurance company had been rejected, and that RTE would have to sue the carrier shortly because the statute of limitation was running. RTE offered control of the litigation against the carrier to Maryland Casualty. No further details of the upset were given and no proof of loss was submitted.

On May 6, 1971, Maryland Casualty wrote RTE disclaiming coverage for the August 24, 1969, incident because RTE had failed to fulfill policy conditions.

RTE sued the carrier and obtained a judgment for the amount of the loss, $14,052.30. RTE then demanded that Maryland Casualty pay RTE's unreimbursed expenses of this litigation, namely $8,382, and on August 29, 1973, RTE submitted to Maryland Casualty a comprehensive proof of loss, detailing the damage to the transformers as well as the amount of the litigation expenses claimed. It is undisputed that this was the first and only proof of loss submitted by RTE. Maryland Casualty refused to pay, and RTE filed the present action demanding reimbursement for expenses of litigation. The case was tried to the court. The trial court entered judgment dismissing the complaint, concluding as a matter of law that RTE had not given timely notice or proof of loss, that the policy made timely notice and filing proof of loss conditions precedent to collection under the policy, and that RTE was thereby precluded from any recovery for damages resulting from the August 24, 1969, accident.

## NOTICE OF LOSS

The central issues of this case are the determination of (1) when RTE's contractual duty to give notice to Maryland Casualty arose; and (2) whether RTE gave notice "promptly" once the duty arose.[1]

RTE's argument, based on paragraphs 14 and 15 of the policy quoted above, is that its duty to give notice did not arise until early in June of 1970 when it first

---

[1] The trial court did not pass upon the question of whether liability for the claimed litigation expenses would exist under Maryland's policy if timely notice and proof of loss had been given. That question is not before this court.

obtained information indicating that insurance provided by the carrier would not cover the damage to the transformers.[2] RTE argues that under paragraph 14 the insurer was liable only for the excess value of loss or damage over the amount due from any other insurance and that under paragraph 15 the duty to give prompt notice arises only when "any loss . . . under this policy" becomes known. The conclusion RTE reaches is that so long as it reasonably believed that it would be paid under insurance provided by the motor carrier no loss under Maryland Casualty's policy was known and no duty of notice existed.

If RTE is correct, it would appear to follow that its letter of June 3, 1970, constituted prompt notice, assuming for purposes of analysis that the letter was sufficient in its content. However, we conclude that RTE's interpretation of the nature of its contractual obligations with respect to notice cannot be sustained.

 The rules governing construction and interpretation of insurance policies are those applicable to contracts generally. *Home Mut. Ins. Co. v. Insurance Co. of N. A.*, 20 Wis.2d 48, 51, 121 N.W.2d 275 (1963); *French v. Fidelity & Casualty Co. of N. Y.*, 135 Wis. 259, 265, 115 N.W. 869 (1908). The contract is to be considered as a whole in order to give each of its provisions the meaning intended by the parties. *Ketay v. Gorenstein*, 261 Wis. 332, 333, 334, 53 N.W.2d 6 (1952);

---

[2] RTE offered to prove that it was assured shortly after the accident that the damage would be covered by insurance provided by the motor carrier and that in the exercise of due diligence it had no reason to doubt that this was so until late May or early June of 1970. At that time RTE was first informed of certain complications in a lawsuit brought by the liability insurer of certain complications in a lawsuit brought by the driver of the truck to recover for personal injuries he sustained in the same accident that destroyed the transformers. RTE would have shown that these complications caused the carrier and its insurer to refuse to pay for the loss of the transformers. These offers of proof were rejected by the trial court.

*State ex rel. Department of Agriculture and Markets v. Badger Dairy, Inc.*, 245 Wis. 229, 232, 14 N.W.2d 34 (1944). The construction of a written contract is normally a matter of law for the court, although in a case of ambiguity in a written contract where words or terms are to be construed by extrinsic evidence, then the question is one for the jury. The rule was stated as follows in *Thurston v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.*, 98 Wis. 476, 478, 479, 74 N.W. 131 (1898):

". . . The case comes clearly within the rule that where language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court."

See also *Breiby v. Department of Administration*, 55 Wis.2d 16, 18, 197 N.W.2d 737 (1972); *Westerman v. Richardson*, 43 Wis.2d 587, 591, 168 N.W.2d 851 (1969); *Rabinovitz v. Travelers Ins. Co.*, 11 Wis.2d 545, 549, 105 N.W.2d 807 (1960); *Bauman v. Midland Union Ins. Co.*, 261 Wis. 449, 451, 53 N.W.2d 529 (1952); *French v. Fidelity & Casualty Co. of N. Y., supra*, 135 Wis. at 269.

In the case at bar no extrinsic evidence was offered or introduced bearing upon the meaning of the terms of the policy. The meaning of the phrase "loss under this policy" was therefore a question of law to be determined by the trial court upon a consideration of the contract as a whole, and because it is a question of law, it may be redetermined independently by this court on

appeal. *Zweck v. D P Way Corp.*, 70 Wis.2d 426, 435, 436, 234 N.W.2d 921 (1975).

■ The parameters of an insured's duties under a policy must be determined from the words used therein. In *Resseguie v. American Mut. Liability Ins. Co.*, 51 Wis.2d 92, 97, 98, 186 N.W.2d 236 (1971), this court found it significant that under the policy there to be interpreted notice was required in the event of "accident, occurrence, or loss." Under such a clause, the court observed that the insured's duty to give notice "was not limited to instances where he knew that there might be an injury and a claim for damages." In *Sheafor v. Standard Accident Ins. Co.*, 166 Wis. 498, 166 N.W. 4 (1918), an accident policy required notice of "injury" within twenty days after "the accident causing such injury," unless shown not to have been reasonably possible. The court recognized that "injury" and "accident" were not one and the same and held that the duty to give notice did not arise until plaintiff was informed by a doctor that he would lose an eye as a result of the accident, though the accident had occurred well over twenty days previously.

In the case of a liability insurance policy requiring notice of accident it was said in *Vande Leest v. Basten*, 241 Wis. 509, 513, 6 N.W.2d 667 (1942), that there was no duty to give notice unless the insured "has reasonable grounds to believe that he is a participant in an accident." *See also Sanderfoot v. Sherry Motors, Inc.*, 33 Wis.2d 301, 308, 147 N.W.2d 255 (1967) ; *Porter v. General Casualty Co.*, 42 Wis.2d 740, 744, 168 N.W.2d 101 (1969). In the latter case the court explained that *Basten* did not rest on the insured's evaluation of whether he (and therefore the insurer) was liable for the injury, but merely on whether the insured had reasonable grounds to believe he had been in an accident. *Id.* at 745. An insured is not authorized by these cases to

speculate on his liability, where his duty is to report an accident or occurrence.[3]

In *Kolbeck v. Rural Mut. Ins. Co.*, 70 Wis.2d 655, 235 N.W.2d 466 (1975), which was an action on a farm insurance policy covering theft of livestock, but excluding "mysterious disappearance," the insured was not required to give notice upon mere knowledge that some of his cattle were missing, which would not have been a covered loss, but was allowed to wait until evidence indicative of theft was discovered. The *Kolbeck* case dealt with an excluded peril, while in the instant case the accident to the transformers was a covered peril, the exclusion relating to a possible limitation on the extent of coverage resulting from the existence of other insurance.

Here the insured's duty was to report a loss under the policy. The policy provides that it insures "against all risks of direct physical loss of or damage to the insured property from any external cause" except perils specifically excluded which are not relevant here. The word "loss" and the phrase "loss or damage" are repeatedly used in the policy and the endorsements. Words in context shall be construed according to common and approved usage and shall be given their plain, ordinary, popular and usual meaning whenever possible. *United Bank of Pueblo v. Hartford Accident & Indemnity Co.*, 529 F2d 490 (10th Cir. 1976) ; *Schluckebier v. Arlington Mut. Fire Ins. Co.*, 8 Wis.2d 480, 99 N.W.2d 705 (1959) ; *Charette v. Prudential Ins. Co.*, 202 Wis. 470, 232 N.W. 848 (1930) ; *Wisconsin Zinc Co. v. Fidelity & Deposit*

[3] Appellant cites *H.H. Hall Construction Co. v. Employers Mutual Liability Ins. Co.*, 43 Ill. App.2d 62, 193 N.E.2d 51 (1963), in which the insured was allowed to avoid the effect of failure to give notice of an accident under a liability policy where the jury could properly have found that the insured, acting as a reasonably prudent person, believed he was not liable for the accident. This rule has not been recognized in Wisconsin.

*Co. of Maryland,* 162 Wis. 39, 155 N.W. 1081 (1916) ; *Merrill v. Travelers' Ins. Co.,* 91 Wis. 329, 64 N.W. 1039 (1895). The dictionary definition of the word loss is "the state or fact of being destroyed or placed beyond recovery." Webster's Third New International Dictionary. *See Sitzman v. National Life & Accident Ins. Co.,* 133 Ind. App. 578, 182 N.E.2d 448 (1962).

■ ■ If one reads the entire policy and the endorsements and substitutes for the word "loss" the dictionary definition *(i.e.,* "the state or fact of being destroyed or placed beyond recovery") the policy makes good sense. An insurance policy must be construed in accordance with the test of what a reasonable person in the position of the insured would have understood the words to mean. *McPhee v. American Motorists Ins. Co.,* 57 Wis.2d 669, 676, 205 N.W.2d 152 (1973). We conclude that a reasonable person in the position of RTE would have known that loss, as the term is used in paragraph 15 of the policy, meant destruction or damage to insured property and that the duty to give prompt notice arose when RTE learned that the transformers had been destroyed.

RTE attempts to avoid this result by stressing the fact that paragraph 15 requires notice of a loss *"under this policy."* Paragraph 14 of the policy provides that where there is other insurance covering the same property, "by whomsoever effected," Maryland Casualty shall be liable only for the excess value of any damage over the amount due from such other insurance. Citing paragraph 14, RTE argues that because the transformers were insured by the carrier, the damage to its transformers was not a loss "under this policy" until RTE learned that the carrier and its insurer would not pay RTE's claim. Considering paragraph 14 in its entirety along with the rest of the policy, we are satisfied that this contention is without merit.

Paragraph 14 is what is commonly known as an "other insurance clause," several varieties of which are in common use. The purpose of paragraph 14 is to prevent the possibility of the insured obtaining a total recovery in excess of the value of property lost. Note, *Automobile Liability Insurance—Effect of Double Coverage and "Other Insurance" Clauses*, 38 Minn. L. Rev. 838, 840, n. 23 (1954).

"Other insurance provisions in a policy are designed to reduce or eliminate the liability of the insurer in whose policy they appear because of the insured's obtaining or having available to him other coverage of a type specified. In general, their purpose is to protect the insurer against the moral risks incident to over-insurance. . . ." Keeton, *Insurance Law*, sec. 3.11(a), p. 168 (1971).

Such a purpose for paragraph 14 is clear from the second sentence thereof, by which Maryland Casualty agreed "to advance to the Assured as a loan" any amounts as to which coverage would be excluded by the first sentence of the paragraph, the loan to be repaid *only* to the extent the Assured realizes on other available insurance.

It is apparent from paragraph 14 that RTE could have made immediate claim upon Maryland Casualty for the damage to its transformers and received payment therefor, without pressing to a conclusion its claim against the carrier or the carrier's insurer. RTE was obligated to make written claim against the carrier immediately, to do whatever necessary to secure Maryland Casualty's subrogation rights and to otherwise cooperate with Maryland Casualty in its prosecution thereof. Under the policy Maryland Casualty could, at its own expense, sue in RTE's name, but the policy did not authorize or obligate RTE to assume responsibility and expense for collection of claims against third parties who might be liable for

losses paid by Maryland Casualty in the form of a so-called "loan."

Despite the stated limitation on coverage contained in paragraph 14, Maryland Casualty's obligation to pay under the policy did not depend upon the lack of other coverage on the insured property. Only the character of Maryland Casualty's payment was affected, and even then, the real character of some or all of an amount paid as a "loan" could not be determined until such time as the insured actually collected upon some other insurance covering the same loss.

We conclude that the existence of a third party's obligation to pay for RTE's loss of the transformers did not alter the fact that a loss under the policy existed as soon as the property was damaged and that RTE's duty of notice arose when it was informed of the damage. Maryland Casualty then became obligated to pay RTE, subject to possible return of funds by RTE if RTE collected from other sources. The policy did not contemplate an exercise of RTE's judgment as to the ultimate source of recovery. No matter how clear the carrier's liability for the loss may have seemed to RTE, it had no right to speculate on the carrier's making payment, rather than turning immediately to Maryland Casualty under the contract.

The question then becomes whether the trial court could properly have ruled as a matter of law that "prompt" notice, as required by the policy, was not given.

Initially, two propositions may be stated as being clear under Wisconsin law. First, the wording of the policy, in particular paragraphs 14 and 26, is sufficient to make the giving of due notice, as well as the filing of proofs of loss, conditions precedent to liability on the policy; second, the burden of showing that such conditions have been met was upon RTE. *Britz v. American Ins. Co.*, 2 Wis.2d 192, 200–204, 86 N.W.2d 18 (1957); *Peterson*

*v. Warren,* 31 Wis.2d 547, 563, 564, 143 N.W.2d 560 (1966) ; *Allen v. Ross,* 38 Wis.2d 209, 214–216, 156 N.W.2d 434 (1968) (discussing *Peterson* and noting that a different rule applies to automobile insurance by force of sec. 204.34 (3), Stats.) ; *Foster v. Fidelity & Casualty Co. of N. Y.,* 99 Wis. 447, 75 N.W. 69 (1898) ; *Underwood Veneer Co. v. London Guarantee & Accident Co., Ltd.,* 100 Wis. 378, 381, 382, 75 N.W. 996 (1898). The absence of an express forfeiture clause in the paragraph setting forth the notice requirement does not change the rule. *State Bank of Viroqua v. Capitol Indemnity Corp.,* 61 Wis.2d 699, 705–709, 214 N.W.2d 42 (1974) ; *Underwood Veneer, supra,* 100 Wis. at 382.

This court has apparently not had occasion to define the term "promptly" as used in an insurance policy notice clause. It has, however, stated that "immediate" notice is to be given in such time as is "reasonably requisite," or "reasonably necessary under the circumstances to do the thing required." *Kentzler v. American Mut. Accident Association,* 88 Wis. 589, 596, 60 N.W. 1002 (1894) ; *Foster v. Fidelity & Casualty Co. of N. Y., supra,* 99 Wis. at 450, 451. There seems to be little difference in the meaning of the terms variously used to define the time for giving notice. The words "immediately," "forthwith," "promptly," "as soon as practicable" all require notice in "a reasonable time." *See* 5A Appleman, *Insurance Law and Practice,* secs. 3501–3503; Annot., 18 A.L.R.2d 443, 448 (1951).

■ Normally the mere passage of time does not constitute noncompliance with the notice provision as a matter of law. *Resseguie v. American Mut. Liability Ins. Co.,* 51 Wis.2d 92, 98, 186 N.W.2d 236 (1971) ; *Porter v. General Casualty Co.,* 42 Wis.2d 740, 744, 168 N.W.2d 101 (1969) ; *Allen v. Ross,* 38 Wis.2d 209, 216, 156 N.W. 2d 434 (1968). The circumstances of the particular case must be considered. *Porter, supra,* 42 Wis.2d at 743. Compliance with notice provisions in insurance policies

may be a matter for the jury or for the court. The test was stated in *Allen v. Ross:*

". . . What is 'as soon as practicable' is by nature a factual matter but, of course, the insufficiency of the proof may be a question of law." 38 Wis.2d at 216.

In *Allen* the court cited several earlier decisions, in which noncompliance with notice provisions was determined by the court as a matter of law, and explained that the holding in each had been based on insufficiency of proof to show that the delay had been justified or reasonable. The statement in *Allen* was followed in *Resseguie, supra,* 51 Wis.2d at 98. The matter was put as follows in *Foster v. Fidelity & Casualty Co. of N. Y.,* 99 Wis. 447, 451, 75 N.W. 69 (1898), and in *Parrish v. Phillips,* 229 Wis. 439, 444, 282 N.W. 551 (1938), one of the cases cited in *Allen:*

". . . Where the facts are uncertain or disputed, and the inferences doubtful, the question whether timely notice was given is one for the jury under proper instructions; but, where the facts are not in dispute, and the inferences are certain, it is a question of law for the court."

This court has decided a number of cases in which delay in notice was held to constitute failure of compliance with the policy as a matter of law. Among them are: *State Bank of Viroqua v. Capitol Indemnity Corp.,* 61 Wis.2d 699, 214 N.W.2d 42 (1974) (Banker's blanket fidelity bond requiring notice "at the earliest practicable moment" after discovery of loss; delay of fifteen months was noncompliance as a matter of law; proffered excuses that coverage was uncertain, or unknown to the insured rejected; insured's ignorance of policy provisions held "inexcusable."); *Sanderfoot v. Sherry Motors, Inc.,* 33 Wis.2d 301, 147 N.W.2d 255 (1967) (Auto liability policy; delay of seven and one-half months not "as soon as practicable" as a matter of law; excuse based on apparently trivial nature of accident rejected on the facts.);

*Kohls v. Glassman,* 29 Wis.2d 324, 139 N.W.2d 37 (1966) (Employer's vehicle liability policy; denial of summary judgment to insurer held error; delay of nearly three years in giving notice, apparently unexplained.) ; *Buss v. Clements,* 18 Wis.2d 407, 118 N.W.2d 928 (1963) (Auto liability policy; where insured knew of accident and injury at the time, not "as soon as practicable" to give notice three years later, as a matter of law.) ; *Britz v. American Ins. Co.,* 2 Wis.2d 192, 86 N.W.2d 18 (1957) (Insurance against theft of truck; unexplained delay of three months not "as soon as practicable" as matter of law.) ; *Calhoun v. Western Casualty & Surety Co.,* 260 Wis. 34, 49 N.W.2d 911 (1951) (Auto liability policy; delay in notice of one year, apparently unexplained, held not "as soon as practicable" as a matter of law.) ; *Parrish v. Phillips,* 229 Wis. 439, 282 N.W. 551 (1938) (Auto liability policy; notice required "as soon as practicable" after twenty days from accident; unexplained delay for additional thirteen days was noncompliance as a matter of law.) ; *Foster v. Fidelity & Casualty Co. of N. Y.,* 99 Wis. 447, 75 N.W. 69 (1898) (Accident policy; insured died due to accident, notice sent forty days later, beneficiary knew cause of death twenty-eight days before notice given; notice held not "immediate," as a matter of law.) ; *Connell v. Milwaukee Mut. Fire Ins. Co.,* 18 Wis. 405 (1864) (Fire insurance; where notice required within twenty days of fire, and was apparently unexplained delay until seventeen days thereafter, trial court held correct in granting nonsuit.)

 Before a court may find noncompliance with notice provisions as a matter of law, it must be able to say that (1) there is no material issue of fact as to when notice was given, and when under the policy the duty to give it arose; and (2) no jury could reasonably find the delay to have constituted only such time as was "reasonably necessary" under the circumstances.

In the case at bar, the delay in giving notice (assuming the June 3, 1970, letter was adequate as to its content) was approximately nine months after RTE learned that its transformers had been seriously damaged. This time delay is well within the range of prior decisions holding delay to constitute noncompliance as a matter of law, and the trial court's determination to that effect should stand, unless the evidence offered by RTE discloses circumstances in which a jury would have been entitled to find justification for the delay.

The record discloses that no such circumstances were shown by RTE's offer of proof. There is no claim of any impediment to the giving of notice. Nor is it claimed that RTE lacked knowledge of the provisions of the policy, and in any case, ignorance on the part of an insured in these circumstances would not be an excuse. *State Bank of Viroqua, supra,* 61 Wis.2d at 709.

The only justifications offered for the delay in giving notice are those discussed previously relating to RTE's belief that the carrier or its insurer would make good the loss. It is our conclusion that those justifications were insufficient in law to postpone the point at which a duty to give notice arose.

RTE argues further that Maryland Casualty was not prejudiced by the lack of notice. This court has held that prejudice is immaterial.

"The fact that Capitol Indemnity was not prejudiced is irrelevant. The contract language requiring timely notice of loss is designed to prevent prejudice or harm to the insurer. It is a fact of life in the insurance field that a timely notice of loss is important . . . . Insurers are entitled to contract for this protection." *State Bank of Viroqua v. Capitol Indemnity, supra,* 61 Wis.2d at 710.

"We deem the requirement of notice of claim of disability and proof thereof . . . as matters of substance which the company placed in the contract for its protection, and the fact that it may appear by hindsight that in this case the company was not prejudiced by failure

to comply does not justify our holding these requirements insignificant or inapplicable." *Kraus v. Wisconsin Life Ins. Co.* (1965), 27 Wis.2d 611, 621, 135 N.W.2d 329.

Although the *Viroqua Bank* case involved fidelity insurance, and the *Kraus* case life insurance, the difference in type of insurance does not appear significant except with respect to motor vehicle liability insurance, which is governed by sec. 204.34(3), Stats.[4] This court has consistently treated the rule established in the statute as an exception to the general rule and has refused to extend the exception beyond its terms. *See: Britz v. American Ins. Co., supra,* 2 Wis.2d, at 200–202. *Cf. Heimlich v. Kees Appliance Co.,* 256 Wis. 356, 359, 360, 41 N.W.2d 359 (1950); *Martinson v. American Family Mut. Ins. Co.,* 63 Wis.2d 14, 21, 216 N.W.2d 34 (1974).

## PROOF OF LOSS

The trial court rested its decision in part upon RTE's failure to file proofs of loss. Paragraph 16 of the policy requires that proofs of loss be filed within ninety days of the loss becoming known to the insured unless the time for filing is extended by the company. It is undisputed that the only proof of loss made by RTE was not filed until August of 1973, though even RTE concedes that a loss was known by June, 1970. There can be no claim that Maryland Casualty waived timely filing of proofs of loss by denying coverage, since it did not deny coverage until May of 1971, which would be far more than ninety days after the loss became known even if we were to adopt RTE's analysis of when the loss under

---

[4] ". . . Failure to give . . . notice shall not bar liability under such policy of insurance, agreement of indemnity or bond as provided in subsection (1) if the insurer was not prejudiced or damaged by such failure, but the burden of proof to so show shall be upon the person claiming such liability." *See:* sec. 631.81, Stats., effective June 22, 1976.

the policy occurred. *State Bank of Viroqua, supra,* 61 Wis.2d, at 704.

The policy in effect makes compliance with its provisions conditions precedent to suit (paragraph 26) and specifically invalidates claims as to which timely proofs are not filed (paragraph 16). If valid, these provisions would obviously require that Maryland Casualty's position be sustained; the only question is whether the law will give the policy provisions effect.

RTE relies on *Britz v. American Ins. Co., supra,* for the following:

". . . Historically, failure by the assured to furnish proof of loss within a stipulated time has only postponed maturity of the claim until the proof was furnished." 2 Wis.2d, at 202.

The cases cited in *Britz* for this proposition all involved fire insurance policies, and Maryland Casualty correctly argues that the cases are distinguishable on this basis.

The standard fire insurance policy, as interpreted by this court, does not make the filing of proofs of loss a condition precedent to liability nor exact a forfeiture for failure in their rendition. The opinion in each case cited in *Britz* clearly indicates that but for this interpretation a different result would have been compelled.[5]

---

[5] For example, in *Flatley v. Phenix Ins. Co.,* 95 Wis. 618, 620, 70 N.W. 828 (1897), it was said:

". . . As [the insurer] did not see fit to exact a stipulation of invalidity or forfeiture in case of a breach of the stipulation, and exacted it as to very many other matters, the conclusion is an entirely justifiable one that it was not intended that any such consequence should flow from its breach . . . ."

The standard fire insurance policy was changed by the legislature to incorporate a clause (much like paragraph 26 in the policy issued by respondent here) providing that "No suit or action on this policy . . . shall be sustainable . . . unless all the requirements of this policy shall have been complied with . . . ." However, in *Klingler v. Milwaukee Mechanics Ins. Co.,* 193 Wis.

■ An insurer may validly impose reasonable restrictions on the time for rendering proofs. At 5A Appleman, *Insurance Law & Practice*, sec. 3506, it is said:

"A reasonable limitation on the time for furnishing proofs of loss is valid, and compliance therewith is an essential condition precedent to recovery. A requirement that such proofs be submitted within sixty days is considered valid and binding on the insured, and is a condition precedent to his right to recover on the policy. Such a period is considered not unreasonably short. A thirty-day requirement has also been held reasonable, even though expressed only in the by-laws of the insurer. A period of ninety-one days for the furnishing of proofs is likewise valid, as is a period of one year. . . .

"Failure to make such proofs within the specified time, unless waived by the insurer, would absolutely prevent recovery in the usual instance. Any undue delay on the part of the insured would absolutely bar his rights. . . ."

To the same effect is 44 Am. Jur.2d, *Insurance*, sec. 1461, p. 327.

RTE has attempted to excuse its failure to give notice until June, 1970, but RTE has offered no reason for the

72, 76, 213 N.W. 669 (1927), the court held that this language did not reflect a sufficiently clear intent to overturn the long established rule as to fire policies that failure to file proofs within the specified time did not work a forfeiture. The court noted that no specific forfeiture provision was made as to late filing of proofs, unlike the policy here involved. *See also Martinson v. American Family Ins. Co., supra,* 63 Wis.2d at 21; and *State Bank of Viroqua, supra,* 61 Wis.2d at 707. In the latter case the court commented (by way of dicta) as follows on the rule pertaining to fire policies:

"The bank relies on a line of fire insurance cases which hold that the requirement in a fire insurance policy for the filing of proof of loss is not a condition to liability but merely postpones the maturity of the claim and does not work a forfeiture of the policy. This doctrine was explained in *Ciokewicz v. Lynn Mut. Fire Ins.* (1933), 212 Wis. 44, 248 N.W. 778, and questionably applied to notice of loss *and is an unusual doctrine in the insurance field and confined to fire cases.*" (Emphasis supplied.)

subsequent delay in filing proof. Maryland Casualty did not deny coverage until May, 1971, some eleven months after the June 3, 1970, letter was sent, and when it did deny coverage one of its stated reasons was failure to file proofs of loss; thus Maryland Casualty did not waive the requirement of timely filing. No claim is made that ninety days was not a reasonable period of time for filing of proof of loss, nor does it seem that such a claim could rightly be made, especially in view of the fact that the policy apparently contemplates that extensions of time would be granted by Maryland Casualty where necessary and where the request is timely made.

It is not claimed that RTE was unable to render proofs of loss as required by the policy. Indeed, the letter of June 3, 1970, stated that claim had already been made against the carrier, and it is reasonable to infer that the information needed to make that claim would have sufficed to make a proof of loss under Maryland Casualty's policy as well.

Under these circumstances we conclude that RTE is precluded from recovery for failure to comply with the requirement for filing timely proofs of loss in addition to its failure to comply with the provision requiring prompt notice of loss.

## REGULARITY OF PROCEEDINGS

RTE claims that there has been no trial of the facts in this case, only one of the law and that Maryland Casualty is not entitled to judgment at this stage of proceedings.

Briefly, the procedure below was the following: The case first came on for trial before the court and a jury on September 24, 1974. Before the trial began, the court made a preliminary determination that the only issues of fact for which a jury was needed were the amount

and reasonableness of damages. The court felt the case should probably be resolved in favor of Maryland Casualty upon the undisputed documentary evidence, as a matter of law, but was not prepared so to rule at that time. Because a jury had already been impaneled, the trial court determined to go ahead with a jury trial on the damage question. However, a mistrial was subsequently declared, and the case again set for trial on December 3, 1974.

On December 3rd the parties and the court reviewed the documentary evidence already part of the record and argued at length as to whether additional evidence ought to be presented and whether any material issues of fact existed. The court ruled in the negative on both questions and ultimately entered judgment for Maryland Casualty.

The trial court had before it the insurance policy and the various letters between the parties. These were admitted in evidence at the mistrial, and it is clear from a reading of the December 3rd transcript that the parties considered that they were evidence that the court was entitled then to consider. There was no dispute as to their accuracy or authenticity. It was stipulated that the documents in evidence were the only communications by RTE that it claimed to constitute notice and that Maryland Casualty had not in any way caused the delay in giving notice. RTE had the opportunity to produce additional documentary evidence at the December 3rd hearing, but it did not do so. RTE had ample opportunity to state what other evidence it wished to produce, but it offered only the evidence already discussed relating to its belief that the damage to the transformers would be compensated by the carrier and its insurer. The trial court correctly held this evidence immaterial. The proceeding below was a trial to the court, in which all material evidence was received and in which the dispositive

issues were properly resolved as matters of law, leaving nothing for a jury to decide.

*By the Court.*—Judgment affirmed.